[Civil No. 508.   Filed March 30, 1897.]

[48 Pac. 214.]

WILLIAM HALL et al., Plaintiffs and Appellants, v. M. V. WARREN et al., Defendants and Appellees.

1. MARRIAGE—COMMON LAW—PERSONAL PROPERTY OF WIFE—TITLE—POSSESSION BY HUSBAND—WAIVER OF RIGHT.—At common law the receipt of a wife's personalty did not of itself make it the property of the husband, unless it was received by him in the exercise of his marital rights, for the purpose of its appropriation to his own use. Such right could be enforced or waived at the husband's pleasure. If waived, the personalty remained the property of the wife.

2. FRAUD—QUESTION OF FACT—EVIDENCE.—Fraud is a question of fact under the code of this territory, and proof necessary to establish the same must be clear and conclusive.

3. FRAUDULENT CONVEYANCES—CREDITOR'S BILL—WIFE'S SEPARATE PROPERTY—EVIDENCE.—When a wife has acquired property with her inheritance, creditors of her husband will not be permitted to subject such property to the payment of his debts where there is a failure to show any equities against the wife, or that she was guilty of any fraudulent representations or concealments or that such creditor ever acted or relied upon any of her expressed or implied representations, though it appears that for a certain time the husband managed the property and she permitted him to hold it out to the world as his own.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. A. C. Baker, Judge. Affirmed.

Statement of facts:—

This was an action in the nature of a creditors' bill in equity, asking that certain real estate and personal property claimed to be owned by defendant Laura E. Warren be subjected to levy and sale, to satisfy a judgment obtained by appellants in the district court of Maricopa County on the ninth day of March, 1893, against the appellee M. V. Warren. The judgment obtained in Maricopa County was upon a judgment alleged to have been recovered in El Paso County, Colorado, against M. V. Warren, on the ninth day of July, 1892. The complaint alleges, in substance: That, for a long time prior to the obtaining of this Colorado judg-

ment, M. V. Warren was engaged in large livestock business in Colorado and other states and territories in his own name, and represented to all persons with whom he transacted business that the assets of his business belonged to himself, and, from the manner of transacting his business, was enabled to, and did, obtain credit in many thousand dollars. That his wife, L. E. Warren, during all this time did not own, or pretend to own, any property whatsoever. The kind and character of property alleged to be owned by M. V. Warren, with an estimate of his wealth, is set out in the complaint. At the time the indebtedness for which the judgments were obtained was contracted, and upon the faith of such possessions and representations, said Warren was permitted to contract such indebtedness. That a short time before the obtaining of the Colorado judgment, and after contracting the indebtedness, M. V. Warren sold his property, and converted it into money, for the purpose of hindering, delaying, and defrauding his creditors, particularly Hall Bros., and went to Arizona with his wife; and, very soon thereafter, L. E. Warren, wife of said M. V. Warren, purchased the Webb ranch and other property in Maricopa County, paying a large sum therefor in money, which she falsely pretended was her own separate property. That the money paid for said farm and property was not money which belonged to L. E. Warren, and was not her sole and separate funds, nor the proceeds of her sole and separate property, but was the sole and separate property of M. V. Warren, or property acquired after the marriage of the Warrens other than by gift, devise, or descent to either of them. That the farm, etc., purchased in Maricopa County was either their common property or the sole and separate property of M. V. Warren; and he unjustly refused to apply the same to the satisfaction of the Hall judgment. That at the time of the intermarriage of the Warrens, which was about thirty years prior to the commencing of this action, L. E. Warren had no property at all, and since her marriage had acquired no property by gift, devise, or descent, and had at all times lived with her husband. That M. V. Warren, after selling his property as stated, placed the proceeds thereof in the hands of, and under the control of, his wife, with the intent and only purpose of hindering, delaying, and defrauding his creditors, and particularly Hall Bros. That such disposition of his prop-

erty did hinder, delay, and embarrass them in collecting their debt. That they knew of no property in the name of M. V. Warren to make their debt. That whatever possession or control L. E. Warren exercised over the property described in the complaint was as agent or trustee for the benefit of M. V. Warren, and was in fraud of the rights of Hall Bros. The value is alleged, and that the Warrens were making efforts to sell the said property for the purpose of further hindering, delaying, and defrauding their creditors, particularly Hall Bros. That the false claim of L. E. Warren to be owner of said property was a serious obstruction to the levy and sale of the same for the purpose of satisfying Hall Bros.' execution, and if such obstruction was permitted to continue, it would render their judgment ineffectual. Plaintiffs ask to be permitted to examine the Warrens as to their property, etc.; that the obstruction or claim of L. E. Warren to the property be removed, and she be declared a trustee holding such property for the benefit of M. V. Warren; and that she surrender the same, and it be sold to satisfy the judgment against M. V. Warren, etc.; for an injunction and general relief.

The Warrens in answering deny generally and specifically all the material allegations of the complaint, and allege, in substance, that they were married in Missouri in 1859, when M. V. Warren was the owner of no property; that, at the time of the marriage L. E. Warren owned property devised to her by her mother of the value of three thousand dollars; that the property was changed into money, and was her sole and separate property; that afterwards, in 1871, said money was invested in cattle by her in the state of Colorado; that in 1883 the investment made by her with the profits was of the value of about forty thousand dollars; that in said year 1883 she sold her property, and the proceeds, consisting of notes, amounted to forty thousand dollars; that the notes were not paid when due, and the property was returned to L. E. Warren, who afterwards, in 1887, sold the same for forty thousand dollars, receiving notes therefor, and ever since, the same, and the proceeds thereof, have been in her absolute control, and she claimed the same as her sole and separate property; that at the times of such sales the Warrens were free from debt; and M. V. Warren was not indebted to Hall Bros. or to any one; that in 1890 they came to Arizona, and, with the

sole and separate property of L. E. Warren, she purchased
the land described in her answer for seventy-five hundred dol-
lars and one thousand dollars worth of cattle and horses, and
that the same was her sole and separate property; that there
was no community property, and M. V. Warren had no sep-
arate property. Much testimony was introduced by the plain-
tiffs showing how M. V. Warren conducted business in
Missouri, Colorado, and other places, which tended to carry out
the allegations of the complaint; and by the Warrens showing
that L. E. Warren received an estate in Missouri, by inheri-
tance, years ago, both from her mother and grandmother, the
proceeds of which were invested as alleged in the answer of the
Warrens. The court below found the issues on the merits in
favor of the Warrens, and the Halls appeal.

A. Buck, and Franklin & Franklin, for Appellants.

The defendant M. V. Warren, after his marriage with de-
fendant L. E. Warren, in 1859, reduced her moneys and per-
sonal property to his own possession, and the same became his
property by virtue of his marital rights, and the same was his
property while he remained in the state of Missouri; was
his property when he came to the state of Colorado, and ever
afterward remained his property, so far as the plaintiffs and
other innocent parties are concerned. By the law of the state
of Missouri prior to the year 1875 all personal property of
wife in possession, whether at the time of the marriage or
afterwards acquired, vested absolutely in the husband, unless
conveyed to her for her sole and separate use. *Woodford* v.
*Stephens,* 51 Mo. 443; *Benne* v. *Schnecko,* 100 Mo. 250, 13
S. W. 82; *Hart* v. *Leete,* 104 Mo. 315, 15 S. W. 976; *Leete*
v. *State Bank of St. Louis,* 115 Mo. 184, 21 S. W. 788; *McCoy*
v. *Hyatt,* 8 Mo. 130.

Personal property inherited by the wife, but reduced to the
possession of the husband, is subject to his debts; and his
creditors have a right to follow the proceeds arising from the
sale of such property into land purchased with them, the title
to which is taken in the wife's name; and it makes no differ-
ence what verbal understanding existed between the husband
and wife relative to the ownership of the property. *Davis's
Executors* v. *Justice,* 14 Ky. Law Rep. 741, 21 S. W. 529.

L. E. Warren never at any time appeared in any of the

business transactions of her husband. During the whole course of his large business her name never appears in connection therewith. She never signed a receipt or note, nor did any one else for her as her agent or trustee.

Appellants had no notice that his wife claimed to own the property and money used in his business, nor any part or parcel thereof. The world at large did not know it. Both she and her husband kept it a profound secret.

It is too late now for her to assert any such right, for by her own acts she is, so far as the rights of the appellants are concerned, estopped and postponed.

Where the true owner of property holds out another, or allows him to appear the owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, such innocent third parties will be protected. Bigelow on Estoppel, 479; *Besson* v. *Eveland,* 26 N. J. Eq. 468; *Riley* v. *Vaughn,* 116 Mo. 169, 38 Am. St. Rep. 586, 22 S. W. 707; *McNeil* v. *National Bank,* 46 N. Y. 325, 7 Am. Rep. 341.

When a married woman gives money to her husband for which she receives no evidence or security, and after nearly thirty years elapse her husband transfers property to her in return for the money so given, the transfer will be considered fraudulent and void as to existing creditors, notwithstanding they may both claim that the money so put in possession of the husband was a loan. *Luers* v. *Brunjes,* 34 N. J. Eq. 19; *Edelen* v. *Edelen,* 11 Md. 420; *Kuhn* v. *Stansfield,* 28 Md. 210, 92 Am. Dec. 681; *Humes* v. *Scruggs,* 94 U. S. 22.

Fitch & Campbell, for Appellees.

The mere receipt of the wife's personalty does not make it the property of the husband, unless he receives it in the exercise of his marital rights for the purpose of its appropriation to his own use.

''The personal property of the wife which came to her after the marriage did not become the property of the husband *ipso facto,* but only when it had been actually reduced to possession by him by such acts as evinced an intention to divest his wife's right or title and make it absolutely his own.'' *Handeford* v. *Devol,* 21 Ind. 405, 83 Am. Dec. 351; *Timbers* v. *Katz,* 6 Watts & S. 290.

"This right of the husband is regarded as a marital right, to be enforced by him or waived at his pleasure. If waived, the property, whether it consists in personal chattels, money, or choses in action, remains the property of the wife." *Hall* v. *Young*, 37 N. H. 134.

"If under certain circumstances the gift from a husband to a wife will be upheld, it is not perceived why the same result will not follow when the gift emanates from a third person, when the husband assents to it, and treats the property as belonging exclusively to his wife." *Welsh* v. *Welsh*, 63 Mo. 57; *Hoes* v. *Boyer*, 108 Ind. 494, 9 N. E. 430.

Admitting the law of estoppel to be as contended for by appellants, the facts do not establish any estoppel.

Was the transfer of the two notes of seven thousand five hundred dollars each to Mrs. Warren a fraudulent transfer, in the light of the evidence in this case? "Fraud" in this case is a question of fact.

The statutes of Colorado and Arizona on the subject of fraudulent conveyances are identical. Gen. Stats. Colo., sec. 1529; Rev. Stats. Ariz., sec. 2037.

Under the statute the question of fraud does not depend upon "reported decisions." Fraud upon the part of the Warrens must be proved by plaintiffs as any other fact in the case. *Manchester* v. *Tibbets*, 121 N. Y. 219, 18 Am. St. Rep. 816, 24 N. E. 305; *Fulp* v. *Beaver*, 136 Ind. 319, 36 N. E. 251; *Threlkel* v. *Scott*, 89 Cal. 351, 26 Pac. 879; *Hutchinson* v. *National Bank*, 133 Ind. 271, 36 Am. St. Rep. 537, 30 N. E. 952.

It is not fraudulent for a husband to prefer his wife as a creditor. *Jewell* v. *Knight*, 123 U. S. 426, 8 Sup. Ct. Rep. 193; *Garner* v. *National Bank*, 151 U. S. 420, 14 Sup. Ct. Rep. 370; *Brock* v. *Hudson Bank*, 48 N. J. Eq. 615, 27 Am. St. Rep. 451, 23 Atl. 269.

If the husband owes the wife, he can pay his debt to her, even though his other creditors will receive nothing. Relationship is not indicative of fraud, and no clearer proof of *bona fides* is required than in other cases. *Teague* v. *Lindsley*, 106 Ala. 266, 17 South. 538.

HAWKINS, J. (after stating the facts).—Appellants contend that it was proved that M. V. Warren, after his marriage, in the exercise of his marital rights under the common law,

which was in force in Missouri up to 1875, reduced her moneys and personal property to his possession; and the same thereby became his property, was his property when they went to Colorado, and ever afterwards remained his property. The testimony is somewhat conflicting upon this. It is clearly shown that, at the time of their marriage, M. V. Warren had only about two hundred dollars' worth of property, and that Mrs. Warren had property inherited from her mother of the value of about three thousand dollars, and inherited property from her grandmother of about the same value; and while witnesses living in Missouri testify that M. V. Warren always did business in his own name in that state, and the property was owned by him, yet a deed introduced shows that real estate in that state was owned by L. E. Warren. The will of her grandmother also showed how she obtained her inheritance, and it is practically conceded that it was from the proceeds of money derived from her inheritance that she finally acquired the property now in Maricopa County. The contract with Hall Bros. was made in 1884, in Kansas. It appears to have been made between them, Warren, and R. J. Howard. The judgment against M. V. Warren grows out of that contract, whereby the Halls sold their interest in the Wilcox herd, or Trinidad Cattle Company's herd, for certain sums, notes, etc., to be assumed by Warren & Howard, and paid Wilcox. It appears that Warren paid one half of the amount to the Halls and Wilcox, losing many thousand dollars on the transaction. He evidently thought it a several transaction, and that he had paid all that he had assumed, and sued the Halls in the Colorado court for damages growing out of this contract; and they counterclaimed, and the court held that the contract was joint, and gave judgment against Warren for $15,464.78. This judgment is valid against M. V. Warren, but it has no binding force whatever against L. E. Warren. The testimony shows that the proceeds of her inheritance were invested in cattle, and in 1883, before the agreement of M. V. Warren and Howard with the Halls, the cattle were sold and notes taken. The cattle were returned, and notes were taken again for forty thousand dollars in 1887, when two seventy-five-hundred-dollar notes were turned over to Mrs. Warren, and twenty thousand dollars paid Scruggs, five thousand dollars expended for other debts and living expenses, and the fifteen

thousand dollars is all Mrs. Warren brought to Arizona as the proceeds of her inheritance. If the allegation were true that, in the exercise of marital rights, the personalty of L. E. Warren had been converted to the ownership of M. V. Warren, it nowhere appears from the testimony that, in getting these seventy-five-hundred-dollar notes, it was in fraud of Hall Bros.' rights. The testimony of the Warrens shows that these cattle, etc., purchased with Mrs. Warren's money, were always her property. It also shows that she knew nothing of the trade made with Hall Bros. at Dodge City, Kansas, until after it was made; that, when she did find out about it, she objected to it; and that none of her money went into it.

At common law, the receipt of a wife's personalty did not of itself make it the property of the husband, unless it was received by him, in the exercise of his marital rights, for the purpose of its appropriation to his own use. Such right could be enforced or waived at the husband's pleasure. If waived, the personalty remained the property of the wife. 1 Bishop on Married Women, par. 119; *Hall* v. *Young*, 37 N. H. 134 et seq. We think the court below, from the evidence in the case, was clearly authorized in holding that Warren never did take possession of his wife's personal property by virtue of his marital rights. The evidence shows that they always considered it the property of Mrs. Warren. It was treated as such in 1883 and in 1887, when Mrs. Warren received the notes; and this court cannot disturb the finding of the court that there was no fraud in her receiving the notes, especially as we are unable to find any evidence showing fraud either on the part of Warren or his wife. If she had been a creditor (which question is not in this case), he would have had the right to prefer her to other creditors, no fraud appearing. If her personal property had been converted by virtue of the marital rights of some common-law jurisdiction, there appears no reason why, no intervening rights of creditors appearing, and no fraud of any kind being proved, he could not have restored her property at any time. Fraud is a question of fact, under the code of this territory, and also under the statutes of Colorado, and proof necessary to establish the same must be clear and conclusive. We find no such degree of evidence in the record, and, with the witnesses before the court below, it was its province to pass upon all questions of

conflict in the evidence, and we think its decision and judgment should on this question be sustained.

It is also claimed that if L. E. Warren had any claim to the personalty and other property, she permitted her husband to appear and hold out that he was the owner, with full power of disposition of the same; and that as Hall Bros. had no knowledge that she claimed or owned said property, and gave large credit to M. V. Warren in pursuance thereof, the property handled by M. V. Warren is subject to sale, to satisfy Warren's judgment to appellants, whether now in his possession or that of his wife, L. E. Warren. This might be true under certain circumstances, but the facts in this case do not apply. Hall seems to have known that the Warren cattle had been sold when he made the agreement with Warren & Howard, at Dodge City. The Warrens had sold their cattle in 1883. Warren & Howard had in 1884 assumed payment of certain notes of Hall Bros. to Wilcox. These notes were secured by a lien on the Hall Bros.' interest in the Wilcox or Trinidad Cattle Company's herd, and Hall appears to have thought the cattle were good for the amount. It is true they secured a note of Warren for twenty-six hundred dollars, and to that extent gave him credit; but this was paid by Warren, and he also paid cash, amounting, with the note, to one half of the interest purchased by him and Howard. He was held liable on this contract, which was held to be joint, for Howard's part also. This is not a sufficient cause for a court of equity to subject the property of Mrs. Warren to the satisfaction of such an obligation. Mrs. Warren does not appear to have led Hall Bros. to believe that Warren was the owner of the cattle sold prior to the Hall trade. The doctrine of estoppel is well stated in a similar case in *De Berry* v. *Wheeler*, 128 Mo. 84, 49 Am. St. Rep. 538, 30 S. W. 339 et seq.: "The question, then, is whether the wife, by permitting the husband to hold the title to her land, by recorded deed, in his own name, would, without other act or representation on her part, be estopped to deny the title as against plaintiff, who, without her knowledge, gave credit to the husband upon the faith of his ownership as it appeared of record. Equitable estoppel arises 'when one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his

own previous position.' In such case 'the former is concluded from averring against the latter a different state of things as existing at the time.' To make this estoppel complete, it is said three things must combine, 'namely, fraudulent representation or withholding the truth when duty requires one to speak, reliance on the expressed or implied representation by the party defrauded, and the consequent act taken by the defrauded person.' Bishop on Married Women, 487. Again, it is said by another: 'It must appear that there was fraud or gross neglect; that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; and that others were acting in ignorance of it; and that he intended to deceive or was culpably negligent in the non-assertion of his rights; that the other party had no knowledge, or means of acquiring knowledge, of the true state of the title; and that he relied upon such admission, to his injury.' Hermann on Estoppel, 987. It must be conceded that Mrs. Wheeler, by permitting the record title to the land to remain in her husband, represented to the public that her husband was the owner of it. Yet in this alone no one could be defrauded. The fraud and the consequent estoppel would only exist when she knew, or from all the circumstances ought to have known, that others, relying upon what she permitted the record to tell them, were dealing or might deal with the husband in such a manner as to cause them to alter their previous condition to their injury.'' The contract with Warren & Howard does not appear to have caused the Halls to alter their previous condition by any act on the part of Mrs. Warren. They were primarily liable on the Wilcox notes. They were secured by cattle which was thought by all of them to be ample to pay them. This liability by the contract was shifted from the Halls to Howard & Warren, as far as it was able to do. Warren paid one half of it. Howard failed to pay his part. The court gave judgment practically for the default of Howard against Warren.

This was strictly an action at law, and we have gone into the case, not from any fault with the Colorado judgment, but simply to find out if any equities have arisen therein in favor of Hall Bros. against L. E. Warren. The court below was fully warranted in finding none. She was guilty of no fraudulent representations. She did not withhold the truth when

duty required her to speak.  Hall Bros. never relied on or acted upon any of her expressed or implied representations. Then, upon what theory could the hand of equity be called upon to take her property, received from the proceeds of her inheritance, and apply it to the payment of this judgment? There is none shown under the state of facts in this case.  The findings of the court below upon the merits are just, and its judgment is affirmed.

Bethune, J., and Rouse, J., concur.