[Civil No. 2208.  Filed December 10, 1924.]

[231 Pac. 100.]

CURTIS E. MILLER, LULA L. MILLER, THOMAS J. ALLEN, and LILLY D. ALLEN, Appellants, v. WILLIAM H. GREENE and MARY L. GREENE, Appellees.

1. FRAUD—EVIDENCE AS TO INCREASE OF WATER SUPPLY, SINCE TRADE OF LAND, HELD INADMISSIBLE.—Where from plaintiff's testimony it appears that defendants represented that land to be received in exchange had permanent water right, and from that of defendants that they had represented that land had temporary water right, it was error to admit testimony to effect that, since trade was consummated and action begun, water association had approved project to build another dam, and that when it was built there would, in engineers' opinion, be sufficient water to continue to furnish water to entire tract.

2. FRAUD—CHARGE PROOF MUST BE CLEAR AND CONCLUSIVE HELD ERRONEOUS.—Charge that fraud was a question of fact under Code, and proof necessary to establish it must be clear and conclusive, was erroneous.

1. Representations made to effect contract as basis for charge of fraud, see note in 37 L. R. A. 593.

See (1) 27 C. J., p. 55.    (2) 27 C. J., p. 81.

APPEAL from a judgment of the Superior Court of the County of Maricopa. O. J. Baughn, Judge. Judgment reversed and cause remanded for a new trial.

Mr. John W. Ray, for Appellants.

Mr. John W. Pruitt, for Appellees.

ROSS, J.—Plaintiffs exchanged with defendants some farm land, situate near Scottsdale, Maricopa county, Arizona, for the Woodford hotel, situate in Phoenix, Arizona. This suit is brought for damages for deceit the defendants are alleged to have practiced on plaintiffs in such trade. The deceit charged is that defendants represented before and at the time of the exchange of deeds that the land (consisting of 176 acres) ''was entitled, as of right, and appurtenant to the ownership thereof, to permanent water''; that plaintiffs relied upon such representation, and believed it to be true, and so believing gave defendants a deed to the hotel property; that the representation was false and untrue, and so known to defendants at the time, the truth being the land had only temporary ''war order'' water.

The defendants admitted in their answer that they represented ''that 40 acres of said land was entitled to a permanent water right, and that the rest thereof was receiving water under a temporary order issued for such water some time prior thereto.''

The case was tried with a jury, whose verdict was in favor of defendant. From the order overruling motion for a new trial and from judgment, plaintiffs appeal. Their assignments of error, two in number, are as follows:

''(1) The appellants assign as errors of the trial court the admission of the testimony of F. C. Hen-

shaw of the Water Users' Association to the effect that, since the trade between these parties had been consummated, and even since this action had been filed, the Water Users' Association had, by its board of governors or directors, approved a project, and submitted same to the stockholders for approval to build another dam on Salt river at Mormon flats, and that, if and when such dam was built, there would, in the opinion of the engineers, be sufficient water to continue to furnish this entire tract with water for all time with a normal rainfall in Roosevelt water shed.

"(2) Appellants also assign as error the giving by the trial court of instruction No. VI, as follows: 'Fraud is a question of fact under the Code of Arizona, and proof necessary to establish same must be clear and conclusive.'"

The evidence conclusively showed that 40 acres of said land had a permanent water right, and that the rest did not have a permanent water right, but had only temporary war order water at the time of the trade in January, 1921. War order water, under directions of the Secretary of the Interior, was being furnished by the Water Users' Association from year to year, at increased prices per acre, to certain lands in the Salt River project, including the Greene tract. The land owner was not entitled to this water as of right, and whether he got it or not depended upon the will of the association, and it was granted only from year to year. The defense evidence was that the land "had temporary water, except the 40 acres in alfalfa had permanent water."

There is a wide difference between temporary water and temporary war order water. The former either at the time had been held or shortly after was decided by the courts to be a permanent water right. The latter is a mere license to be renewed from year to year. In the state of the evidence, it appearing from the testimony of plaintiffs that it

was represented to them the land had a permanent water right, and from the testimony of defendants that they had represented it had a temporary water right, with the exception of 40 acres, it seems to us evidence of a proposed project to increase the water supply of the association which, when completed, might have available water for a permanent right to the rest of the 176 acres, was certainly foreign to the issue. At the time of the trial the Mormon Flat project was a paper one. It had not been voted upon by the association, and had not been approved. We personally know that it is now in the course of construction, but whether as a result of its completion the rest of the 176 acres will be supplied with permanent water only time can tell.

The defendants, however, contend that the testimony of Mr. Henshaw, the secretary of the Water Users' Association, was material in mitigation of damages. The doctrine undoubtedly is, in cases of fraud and deceit, that the representation must be false, and if it was not false, though believed to be so by defendants, it will be insufficient. The evidence did not tend to show that the rest of the 176 acres had a permanent water right, or that the representation was not false. If by good luck or fortune the land prior to the trial should have acquired a permanent water right, through the building of the Mormon Flat dam or otherwise, that fact would have been pertinent on the question of damages. Under the circumstances, however, we cannot conceive how the proposition of the Water Users' Association to increase its water supply by the building of the Mormon Flat dam could in any way mitigate any damages that plaintiffs might have sustained.

The instruction as to the character of proof, to prove fraud when it is in issue, is clearly wrong.

Because the presumption is indulged that people are honest and usually act fairly and honestly with their fellows, one charging fraudulent and dishonest conduct and representations is required by one line of cases, in order to succeed in his charge, to produce clear and convincing proof thereof. 27 C. J. 81, § 225, note 55. Another line of cases refuses to approve an instruction so strong, holding it places too great a burden on the plaintiff. 27 C. J. 81, § 225, note 55. Nowhere has a court approved of an instruction in the language of the one given in this case. In *Hall* v. *Warren,* 5 Ariz. 127, 48 Pac. 214, the court erroneously announced the rule contained in this instruction as a correct proposition of law, and that doubtless was the cause that influenced the learned trial court to give it in this case.

For the reasons above indicated, the judgment must be reversed and remanded for a new trial. It is so ordered.

McALISTER, C. J., and LYMAN, J., concur.