631 P.2d 571

Richard C. GODWIN, Appellant,

v.

FARMERS INSURANCE COMPANY OF AMERICA, Appellee.

No. 1 CA–CIV 4138.

Court of Appeals of Arizona, Division 1, Department A.

June 11, 1981.

Kunz & Stinson, Ltd., by Richard M. Waugh, Phoenix, for appellant.

Johnson, Jessen, Dake & Oplinger, P. A., by T. Gale Dake and Ruth L. Harris, Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

This is an appeal by Richard Godwin (hereinafter referred to as Godwin) from a judgment and order entered in a contract action involving a fire insurance policy with Farmers Insurance Company of Arizona (hereinafter referred to as Farmers). We affirm the judgment in part and reverse in part.

We find the following facts are relevant to our resolution of this case: Godwin owned a residence located in Scottsdale, Arizona. This residence was separated into two separate living quarters connected by a carport.

On November 21, 1975, a fire occurred in the smaller of the two living quarters. Godwin and his wife were inside these quarters when the fire occurred. Godwin testi-

fied that he was awakened in the early morning hours of November 21, 1975 by the smell of smoke. He arose from bed and entered the living room where he had observed the fire in the area of the couch. He thereafter awakened his wife and took her outside. Further Godwin testified that he re-entered the house twice; once, to phone the fire department; second, to retrieve his eyeglasses and to get some clothes.

The Rural Metro Fire Department indicated that the fire was reported to them at 1:32 a. m. on November 21, 1975. The fire department arrived at 1:44 a. m. and had the blaze under control one-half hour later; by the time the fire was under control the smaller of the living quarters was completely destroyed.

A fire investigator with the Rural Metro Fire Department, Mr. Weldon Paxton, conducted an examination of the scene of the fire on the morning of November 21, 1975. He concluded that the fire was caused by arson. The police then conducted their investigation.

Godwin had a homeowner's insurance policy with Farmers. It is undisputed that all premiums were paid and the policy was in full force at the time of the fire. Because of the police and fire departments' investigations, Farmers hired its own investigator, Mr. Thomas Pugh, who came to Phoenix on November 25, 1975, to investigate the loss. Mr. Pugh also concluded that the fire was caused by arson. Godwin hired his own fire investigator, Mr. W. C. Carmichael, who investigated the fire in July of 1976 and concluded that the fire was not incendiary.

Godwin gave Farmers due notice and proof of loss and Farmers refused to pay said loss. Godwin, on March 4, 1976, filed suit in the Maricopa County Superior Court against Farmers for the refusal to pay.

This matter was brought on March 28, 1977 to trial before a jury. At trial, Farmers asserted the affirmative defense of arson by Godwin to void its obligations under the policy. On April 15, 1977, the jury returned a verdict in favor of Farmers. On June 17, 1977, the trial court entered judgment in accordance with the jury's verdict.

Godwin filed a motion for new trial and for judgment notwithstanding the verdict and to alter or amend the judgment on June 28, 1977. The court denied this motion on August 8, 1977 by formal written order and this appeal followed:

Further facts will be given as they pertain to the issues involved.

Godwin presents six issues for our review:

1. It was error for the trial court to refuse to instruct the jury that the defense of fraud by arson must be proved by "clear and convincing" evidence.

2. The jury's verdict was unsupported by substantial evidence.

3. The jury's verdict resulted from the erroneous admission of highly prejudicial and patently improper evidence which should have been excluded.

4. The prejudicial remarks, improper questions and objectionable conduct of opposing counsel prevented a fair trial and resulted in a miscarriage of justice.

5. The trial court erred in charging the jury that the insured could not recover for the property his wife lost in the fire.

6. It was error to award attorneys' fees in favor of the insurance company on the basis of A.R.S. § 12–341.01.

## STANDARD OF PROOF

■ Godwin alleges that the trial court committed reversible error by refusing to instruct the jury that the defense of arson be proved by clear and convincing evidence. We disagree.

This is a case of first impression in Arizona. We have examined the case law in other jurisdictions and have decided to follow the majority rule that the burden of proof for the defense of arson in a civil case is satisfied by a preponderance of the evidence.

In Arizona, the burden of proof in civil cases is satisfied by the preponderance of evidence. *New York Life Insurance Company v. McNeely*, 52 Ariz. 181, 79 P.2d 948 (1938). An exception to this rule is that

fraud must be proven by clear and convincing evidence. *In re Trigg Estate,* 3 Ariz. App. 385, 414 P.2d 988, affirmed 102 Ariz. 140, 426 P.2d 637 (1966). Godwin argues that arson by an insured to collect insurance premiums is a "specie of fraud" and as such must be proven by clear and convincing evidence.

However, we find that in those jurisdictions which follow the minority rule that arson in a civil case be proved by clear and convincing evidence base their analysis, in part, on the assumption that proving an act of a criminal nature requires more than a preponderance of the evidence. *Carpenter v. Union Ins. Society of Canton, Ltd.,* 284 F.2d 155 (4th Cir. 1960); *Jonas v. Northeastern Mutual Fire Ins. Co.,* 44 Wis.2d 347, 171 N.W.2d 185 (1969). This analysis was impliedly rejected by the Arizona Supreme Court in *Brown v. Jerrild,* 29 Ariz. 121, 239 P. 795 (1925). Most of the jurisdictions which hold that the defense of arson in a civil case is proved by a preponderance of the evidence also follow the rule that fraud must be proven by clear and convincing evidence. *See e. g., Werner's Furniture, Inc. v. Commercial Union Insurance Co.,* 39 Ill.App.3d 59, 349 N.E.2d 616 (1976); *George v. Travelers Indemn. Co.,* 81 Mich. App. 106, 265 N.W.2d 59 (1978); *Quast v. Prudential Property & Cas. Co.,* 267 N.W.2d 493 (Minn.1978); *Pacific Ins. Co. v. Frank,* 452 P.2d 794 (Okl.1969); *Great American Ins. Co. v. KW Log. Inc.,* 22 Wash.App. 468, 591 P.2d 457 (1979); *Klayman v. Aetna Casualty Co.,* (Colo.App.) 501 P.2d 750 (1972); *Honeycutt v. Aetna Casualty Ins. Co.,* 510 F.2d 340 (7th Cir. 1975) cert. den. 421 U.S. 1101, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975). Two major insurance treatises do not even recognize that a minority rule exists. See 18 G. Couch, Insurance § 74.664 (2nd Ed. 1968); 21 Appleman, Insurance Law & Practice § 12229, at 252–53 (1980).

We conclude that, as in other civil cases where fraud is not specifically alleged, the burden of proving the defense of arson is satisfied by a preponderance of the evidence.

**SUBSTANTIAL EVIDENCE**

To sustain a defense of arson, the insurer has the burden to prove by the preponderance of the evidence that: (1) the fire was of incendiary origin and (2) the insured was responsible for it.

This Court must sustain a trial court's judgment entered on a jury verdict when it is supported by substantial evidence. *Leone v. Precision Plumbing & Heating of Southern Arizona, Inc.,* 121 Ariz. 514, 591 P.2d 1002 (App.1979). It is not our prerogative to weigh the evidence and determine the credibility of witnesses. *Van Emden v. Becker,* 6 Ariz.App. 274, 431 P.2d 915 (1967). Where reasonable men, from the evidence shown, might draw different inferences and conclusions, the reviewing court must accept those inferences drawn by the jury. *Bullard v. Stonebracker,* 101 Ariz. 584, 422 P.2d 700 (1967).

Godwin contends that there is no substantial evidence to support the jury's verdict. We disagree. As was recognized by the Washington Court of Appeals in *Great American Insurance, supra,* arson as a clandestine act may be proven entirely by circumstantial evidence. That court stated: "Arson is an offense which is most often proved by circumstantial evidence. It is one of those crimes which is peculiarly of secret preparation and commission; and it is seldom that the prosecution can furnish testimony of an eyewitness who observed the setting of the fire. It is judicially recognized that a well-connected train of circumstances may be as satisfactory as an array of direct evidence. A. Curtis, The Law of Arson § 485, at 517–20 (1936); 6A C.J.S. Arson § 48 (1975); 5 Am.Jur.2d Arson and Related Offenses § 47 (1962); see W. Hooper, Circumstantial Aspects of Arson, 46 J.Crim.L.C. & P.S. 129 (1955)." 591 P.2d at 460.

In the instant case, the evidence from which a jury could reasonably and properly conclude that the fire was incendiary may be summarized as follows: Fire investigators Paxton and Pugh investigated the scene of the fire and both concluded the fire was incendiary. Their conclusion was based

upon many factors, including the following: the presence of charring below the tile in the foyer; the inconsistency of the burn pattern and the burning below the rug line indicated that flammable substance was poured on those areas in the house; the fire vented itself (burned itself out through a hole in the roof) earlier than would be expected from an accidental fire, and the bowing of the station members (steel poles) showed that the heat of the fire was more excessive than it would be when a fire is accidental.

The evidence from which a jury could conclude that Godwin was responsible for the fire included the following: Godwin was at the scene of the fire; all entrances to the house were locked prior to the fire; Godwin testified that he entered the house to retrieve certain items but that he exited without retrieving any of them.

Godwin had a financial motive for setting the fire: He had been attempting to sell his home for approximately three years prior to the fire without success; Godwin could not lease one of the structures to another person due to zoning restrictions; the replacement of the value of the structure destroyed by the fire was $86,000 but the fair market value of the structure was only $30,000 based on the market values for similar type homes at the time of the fire. The value of the insurance policy for coverage on the dwelling was $110,000. In addition, Godwin had filed a verified petition to modify his child support payments in 1976. The attached affidavit showed that his monthly income for January of that year and for preceding months was approximately $350.00. At the time of the fire Godwin was applying for a $25,000 personal loan which was subsequently denied.

We conclude that the jury verdict was based on substantial evidence.

## INADMISSIBILITY OF EVIDENCE

Godwin first alleges that Paxton's testimony about the incendiary origin of the fire was inadmissible because Paxton was not qualified as an expert in the field of fire reconstruction. We disagree.

Whether one is competent to testify as an expert is within the sound discretion of the trial court. *Arc Elec. Co. Inc. v. Esslinger Lefler, Inc.*, 121 Ariz. 501, 591 P.2d 989 (App.1979); *Englehart v. Jeep Corp.*, 122 Ariz. 256, 594 P.2d 510 (1979). An expert may be qualified to give an opinion by reason of actual experience or careful study. *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (App.1978); Rule 702, Rules of Evidence 17A A.R.S.

In the instant case Paxton had studied fire science at the Payson Community College and had attended a week long seminar on fire investigation sponsored by the National Association of Arson Investigators in Lincoln, Nebraska prior to conducting an investigation of the Godwin fire. In addition, Paxton had been investigating fires for the Rural Metro Fire Department since late 1973. We conclude the trial court could find that Paxton was qualified as an expert in fire reconstruction by a combination of his study and field experience, therefore, the trial court did not abuse its discretion in allowing Paxton to testify.

Godwin next contends that he was prejudiced by opposing counsel's misleading hypotheticals and by allowing Detective Weiss to relate his suspicions and speculations concerning Godwin's involvement in the fire. We note that in the hypothetical he cites as being misleading there was no objection made by his counsel. We note further that the objection made to Detective Weiss' testimony was not only untimely but was also too general to preserve the issue for review. It is settled that the appellate court will not review on appeal alleged error at trial where the appealing party has failed to make the proper record in the form of an objection stating specifically the reasons therefor. M. Udall, Arizona Law of Evidence, § 12 (1961).

## CONDUCT OF TRIAL

Godwin alleges that the record is replete with improper remarks and questions by opposing counsel and cites two examples of

such alleged misconduct. We have examined his examples and find that Godwin's counsel did not object to them at the time they occurred. Inasmuch as plaintiff did not object or move for mistrial at the time of the alleged misconduct of opposing counsel, this Court will not consider the matter for the first time on appeal. *Rodriguez v. Williams*, 107 Ariz. 458, 489 P.2d 268 (1971).

■ Next, Godwin alleges that opposing counsel repeatedly framed questions which placed inadmissible material before the jury. His two examples are as follows:

"Q. [By MR. DAKE during redirect examination of MR. PAXTON]

Are you aware that the reason there was no criminal prosecution was because of what is known as a husband/wife privilege?

MR. WRIGHT: Objection, Your Honor. There is no evidence that that was the case.

THE COURT: Sustained.

MR. DAKE: I am asking him—

THE COURT: Sustained."

"Q. [By MR. DAKE during redirect examination of MR. ODEN]

Counsel has brought up this letter that I've been staying away from.

Let me ask, are you aware that a letter sent to Rural Metro Fire Department indicated that the plaintiff intended to sue Rural Metro Fire Department if they testified that it was arson.

A. That's the first I've heard about it.

MR. WRIGHT: Your Honor, may I approach the Bench?

\* \* \* \* \* \*

THE COURT: The previous question by Mr. Dake is stricken out and the answer stricken and you are not to consider that in your deliberation."

We note, as Godwin concedes, that the trial court sustained timely objection to these questions and further instructed the jury not to consider the questions and answers in their deliberations. Godwin alleges that these questions and answers were sufficiently prejudicial to require reversal even though the objections were sustained. *El-*

*ledge v. Brand*, 102 Ariz. 338, 429 P.2d 450 (1967). We disagree. The objection to the question concerning the husband-wife privilege was later withdrawn by Godwin's counsel. The letter sent to the Rural Metro Fire Department was given to the jury in order that they could determine its content for themselves. We find no reversible error.

■ Third, Godwin argues that opposing counsel's offer of police records of the fire investigation after the trial court ruled that these records were inadmissible were prejudicial error. We note that Godwin only refers to one example in the record where opposing counsel moved for admission of these records after the court's ruling; this occurred when Godwin's attorney was asking questions concerning these records. Therefore, we believe that any prejudice which resulted was invited by Godwin's own counsel and such will not be considered on appeal.

Further, Godwin alleges that the testimony of Detective Weiss to the effect that the only reasons that Godwin was not prosecuted for arson was that it could not be proven "without the testimony of Mrs. Godwin and inasmuch as Mrs. Godwin was married to Mr. Godwin the State could not solicit her testimony by law" was prejudicial error. However, in examining this testimony, we find that Godwin's counsel withdrew his objection to the question and answer. Again, it is well settled in Arizona that a party cannot predicate error on admission of evidence to which objection is made if thereafter he withdraws the objection. *State v. Lubetkin*, 78 Ariz. 91, 276 P.2d 520 (1954).

■ The most potentially prejudicial statement made during the trial was by the insurer's claim representative who inadvertently stated that Mr. Godwin "had flunked the polygraph test." However, we find that the judge's actions following this remark cured any prejudice which might have resulted therefrom. The judge told the jury that the results of any polygraph test were inadmissible at trial due to its unrelia-

**422**

bility. Further, he told them that the unreliability in the present case was apparent in that Godwin had taken another test in which the results were favorable to him. Then, the judge struck both the question and answer about the polygraph test and his remarks concerning the other test from the record and told the jury not to consider any of that information in their deliberations  We note that both counsel stated at this time that the foregoing instructions to the jury were suitable. Therefore, we find no prejudicial error.

### WIFE'S RECOVERY

■ The trial judge instructed the jury that neither Mr. Godwin nor Mrs. Godwin could recover for items Mrs. Godwin lost in the fire. Godwin argues that the foregoing instruction constitutes reversible error because it undermined the credibility of his case before it was ever presented.[1] We disagree. The instruction was immediately followed by the judge's admonition to the jury that it "didn't affect the validity of his claim at all. It doesn't make it a better claim or worse claim than it is." Therefore, we conclude that the instruction did not undermine the credibility of Godwin's case.

### ATTORNEY'S FEES

■ Godwin argues that the granting of attorney's fees in the judgment pursuant to A.R.S. § 12–341.01 was erroneous. We agree.

This issue is disposed of by the case of *Uslife Title Co. v. Soule*, 122 Ariz. 79, 593 P.2d 302 (App.1979). *Uslife* held that A.R.S. § 12–341.01 cannot be applied to an action filed before the effective date of the statute. This action was filed on March 4, 1976, well before the statute's effective date of September 23, 1976. Therefore, the award of attorney's fees is reversed.

For the foregoing reasons, the judgment of the superior court is affirmed in part and reversed in part.

FROEB and EUBANK, JJ., concur.

1. Godwin concedes that it did not affect his amount of recovery since his personal property claims alone exceeded the coverage under the policy.