**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Daniel C. SCHLEY, Defendant.**

**No. 96–C–15.**

United States District Court, E.D. Wisconsin.

Sept. 25, 1997.

---

R. Jeffrey Wagner, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, WI, for Plaintiff.

Perry H. Friesler, Everett Wood, Davis & Kuelthau, S.C., Milwaukee, WI, for Defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On November 29, 1995, the plaintiff, American Family Insurance Company ["American Family"], filed a complaint against Daniel C. Schley in the circuit court for Waupaca County. The plaintiff requested a declaratory judgment setting forth the rights and obligations of the parties under a policy of insurance which it had issued to Mr. Schley. The court is asked to determine how the insurance policy applied to the loss of the defendant's barn and silo due to a fire which occurred on May 28, 1995. The action was removed to this court on January 4, 1996, under 28 U.S.C. § 1332 which, at that time, allowed removal of actions between citizens of different states where the amount in controversy exceeded $50,000. The current version of 28 U.S.C. § 1332, which is not applicable to this case, requires that the amount in controversy exceed $75,000.

A trial to the court was conducted from August 20, 1997, through August 21, 1997. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure.

## I. BACKGROUND

At all relevant times, Mr. Schley owned a piece of property located at E9503 East Madison in Clintonville, Wisconsin [hereinafter referred to as "the property"]. The property consisted of 43 acres of land, a three bedroom house, a two car garage, a machine shed, a silo and a barn. The property was insured by American Family since 1989.

Mr. Schley moved from Clintonville to Colorado in the fall of 1993. On October 21, 1993, he listed the property for sale with an asking price for the entire property of $99,500. (Ex. 8A.) The real estate listing was modified on January 24, 1994, to permit the sale of the "house and 5 acres" for $75,000. (Exs. 8B and 8C.) The real estate listing expired on April 21, 1994. No offers were made to buy the property, or any portion thereof, while it was on the market. Mr. Schley did not renew the listing contract when it expired in April 1994.

Around April or May 1994, the property was leased to John Schultz. Mr. Schultz used the property to raise dairy cows. He sublet the house to Pete and Shannon Tremper in July 1994, while he continued to use

the remainder of the property. Between May 1994 and May 1995, Mr. Schultz negotiated with Mr. Schley to purchase the property, but the negotiations were not successful. Indeed, in mid-to-late May 1995, Mr. Schultz informed Mr. Schley that he intended to move off the property in June 1995. Consequently, on or about May 24, 1995, Mr. Schley contacted Gerry O'Connor, his realtor in Clintonville, and discussed relisting the property. Mr. O'Connor prepared a listing contract with an asking price for the entire property of $101,900. (Ex. 8E.) This listing contract was never returned to Mr. O'Connor.

On May 25, 1994, after Mr. Schley moved to Colorado, the insurance coverage was reduced from $90,000 to $45,000. (Ex. 1C.) Mr. Schley increased the coverage on March 31, 1995, back to $90,000. (Ex. 1D.)

On May 28, 1995, at 2:47 a.m., Shannon Tremper reported the property as being on fire. Firefighters arrived at the scene at approximately 2:53 a.m. but were unable to salvage the barn and the silo. According to the investigators, the fire originated in the upper level of the barn on the west side of the building. (Exs. 7 and 9.)

After investigating the cause of the fire, the investigators all determined that the fire was not electrical in origin. (Ex. 7.) In addition, the investigators ruled out mechanical, chemical and other external factors such as lightening as the cause of the fire. The conclusion reached by the investigators was that the fire was caused by human hand; however, they were unable to rule out accidental cause. (Ex. 9.) None of the firefighters or investigators detected an odor of flammable liquid at the fire scene nor did they discover combustible materials at the scene.

On June 5, 1995, eight days after the fire, Mr. Schley was interviewed separately by American Family claims adjuster, Stuart McIntyre, and American Family investigator, Cheryl Reese–Anderson. During his interviews, Mr. Schley told them each that he was in Colorado at the time of the fire. Specifically, he told Mr. McIntyre and Ms. Reese–Anderson that on Friday, May 26, 1995, and Saturday, May 27, 1995, he was fishing in Blue Mesa Reservoir, Colorado. He also told Ms. Reese–Anderson that, on Saturday evening—May 27, 1995—he attempted to visit "friends" in Grand Junction, Colorado. He was unable to identify these friends or recall where he spent that night.

Ms. Reese–Anderson interviewed Mr. Schley again on July 24, 1995. During this interview, Mr. Schley reiterated that he was in Colorado at the time of the fire. He recalled that the friend that he had been attempting to visit in Grand Junction, Colorado was named "Sparky."

The statements made by Mr. Schley concerning his whereabouts on May 26, 1995, through May 28, 1995, were, for the most part, false. Indeed, the evidence established that Mr. Schley was not in Colorado at the time of the fire on May 28, 1997. Instead, at 3:00 p.m., on Saturday, May 27, 1995, Mr. Schley flew from Grand Junction, Colorado to Minneapolis—via Denver. He arrived in Minneapolis at 9:00 p.m. and, at 9:25 p.m., rented a car from National Car Rental at the Minneapolis airport. He returned the car at 10:52 a.m. the next morning. The odometer revealed that the car had been driven 513 miles during the time Mr. Schley rented it. The round trip distance between the Minneapolis airport and the property in Clintonville is approximately 480 miles.

On October 20, 1995, Mr. Schley told American Family officials that he flew to Minneapolis on Saturday, May 27, 1995, to visit his girlfriend, Kathleen Dean, who was staying with her mother in Winona, Minnesota. (Defendant's Ex. 23.) Kathleen Dean's testimony was consistent with Mr. Schley's representations. However, Ms. Robert Lorenz, Kathleen Dean's mother, informed Ms. Reese–Anderson that Mr. Schley did not visit them over the Memorial Day weekend. (Defendant's Ex. 24.)

On August 28, 1995, Mr. Schley executed a "Sworn Statement in Proof of Loss" which was subsequently submitted to American Family. In the Proof of Loss, Mr. Schley claimed a loss of $90,000 for the barn which was destroyed in the fire and a loss of $5,000 for the silo involved in the fire. (Ex. 11.) Mr. Schley signed the proof of loss, under oath, on August 28, 1995. (Ex. 11 .)

According to an independent appraisal ordered by American Family in July 1995, the actual value of the *entire* property was $89,-000. (Ex. 6, pp. 2 and 10.) Of this amount, the land was valued at $35,000 and the structural improvements were valued at $54,000. (Ex. 6, pp. 2 and 10.) The appraised value of the barn, as of May 27, 1995, was $21,168, and the silo was $680. (Ex. 6, p. 7.) Mr. Schley was not advised that an appraisal of his property had been ordered before he submitted his proof of loss.

The American Family insurance policy which applied to the property on the date of the fire was an actual cash value policy. Everett Pierre, the insurance agent who sold Mr. Schley the American Family insurance policy, testified that he informed Mr. Schley that the policy was an actual cash value policy.

Amended "General Condition 4" of the insurance policy governs "Concealment or Fraud" and provides, in relevant part:

a. No misrepresentation or breach of affirmative warranty, made by or on behalf of an insured, affects our obligations under this policy unless:

(1) we rely on it and it is either material or made with an intent to deceive; or

(2) the fact misrepresented or falsely warranted contributes to the loss.

(Ex. 1a, "Page 1 of 2.") The American Family insurance policy also contains a provision— "Sections I, III and IV—Exclusions"—which excludes coverage for intentional acts or neglect on the part of the insured; that section provides, in pertinent part:

We do not cover loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

\*     \*     \*     \*     \*     \*

3. Intentional Loss. We do not provide coverage for any insured who commits or directs an act with the intent to cause a loss.

4. Neglect of an insured to use all reasonable means to protect covered property at and after the time of loss.

(Ex. 1A, "Page 5 of 21.")

## II.  ANALYSIS

In its complaint, American Family seeks a declaratory judgment that Mr. Schley is not entitled to coverage in connection with the May 28, 1995, fire loss because: (1) Mr. Schley's false statements to American Family's investigators violates the "Concealment or Fraud" section of the policy; (2) Mr. Schley's overvaluation of the loss violates the "Concealment or Fraud" section of the policy; and (3) Mr. Schley's intentional burning of the barn falls within the "intentional act" or "neglect" exclusion of the policy.

█   Under the principles set forth in *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court exercising diversity jurisdiction must follow the law of the state in which the action was brought. The parties agree that the law of the state of Wisconsin is applicable in determining their obligations under the insurance contract in this case. In applying the state's substantive law, I must first look to cases decided by the state's highest court. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Hill v. International Harvester Co.,* 798 F.2d 256, 260 n. 12 (7th Cir.1986). If the supreme court of Wisconsin has not decided the issue, I am permitted to look to the decisions of the state's intermediate appellate court's, *Hill,* 798 F.2d at 260 n. 12, the state's federal court and then decisions from courts in other states to determine how the Wisconsin's highest court would rule on the matter, *see Shirley v. Russell,* 69 F.3d 839, 843 (7th Cir.1995); *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 701 F.2d 1189, 1197 (7th Cir.), *cert. denied sub nom.,* 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983).

### A.  False Statements Concerning Mr. Schley's Activities at the Time of the Fire

█   As stated above, the American Family insurance policy denies coverage for mis-

representations made by the insured which are (1) relied on, and (2) are "either material or made with intent to deceive." American Family argues that it relied on Mr. Schley's statements concerning his whereabouts at the time of the fire and that such statements were both material and made with intent to deceive. Mr. Schley argues that the "Concealment or Fraud" provision of the policy is inapplicable because the plaintiff did not rely on his statements. The plaintiff has the burden of proving that the defendant made misrepresentations which were material or intentional and that such statements were relied on by the plaintiff by clear, satisfactory and convincing evidence. *See Miles v. Mackle Bros., Division Deltona Corp.,* 73 Wis.2d 84, 89, 242 N.W.2d 247 (1976); *Eiden v. Hovde,* 260 Wis. 573, 577, 51 N.W.2d 531 (1952).

■ There is ample evidence in the record demonstrating that Mr. Schley made numerous false statements concerning his activities over the 1995 Memorial Day weekend, and in particular, the early morning hours of May 28, 1995. Moreover, the activities of the owner of property which was destroyed by a suspicious fire are pertinent to a claim under this insurance policy. I am persuaded that Mr. Schley's misrepresentations were material. In addition, the fact that Mr. Schley continued to misrepresent his activities to American Family after his first interview and also added new false details to his story during the second interview demonstrate that the misrepresentations were made with the intent to deceive American Family.

Mr. Schley's explanations for his misstatements—that he could not recall his activities on the night of the fire and that he did not want to mention his trip to Minneapolis until he verified the dates with his credit card bill—are not credible. Mr. Schley's first interview with American Family investigators occurred a mere eight days after the fire. Further, his credit card statement was prepared approximately 9 days after the fire yet he failed to mention his trip to Minneapolis to American Family until October 20, 1995— four months after he was first questioned by American Family.

■ Notwithstanding his material and intentional misrepresentations, Mr. Schley argues that the "Concealment or Fraud" provision of the policy does not preclude coverage because American Family did not rely on his statements. Specifically, Mr. Schley argues that the fact that the misinformation he provided to American Family was "double-checked" by its investigator, Ms. Reese-Anderson, after the misstatements were made, prevents the insurer from arguing that it relied on his misrepresentations.

In support for his argument that reliance has not been proved, Mr. Schley points to the decision of the Wisconsin court of appeals in *Northwestern National Ins. Co. v. Nemetz,* 135 Wis.2d 245, 400 N.W.2d 33 (Ct.App.1986). In *Nemetz,* the insured, Mrs. Hazel, witnessed her husband's hospital room confession to having poured gasoline in the tavern they owned immediately before the explosion and fire which destroyed the tavern. Subsequently, Ms. Hazel signed a proof of loss form on which she stated that the origin of the fire was "unknown." The Wisconsin court of appeals rejected the insurer's argument that her misrepresentation in the proof of loss as to the origin of the fire voided the policy. The Wisconsin appellate court held that her misrepresentation in the proof of loss did not invoke the insurer's reliance because the insurer knew of the husband's admission as well as the investigator's theories as to the cause of the blaze before the proof of loss was prepared. *Nemetz,* 135 Wis.2d at 262, 400 N.W.2d 33.

In my opinion, the *Nemetz* decision is not controlling on the issue of whether American Family has demonstrated its reliance on Mr. Schley's misrepresentations. The Wisconsin court of appeals has stated that the discussion in *Nemetz* regarding the element of reliance was dicta. *Tempelis v. Aetna Casualty & Surety Co.,* 164 Wis.2d 17, 22, 473 N.W.2d 549 (Ct.App.1991), *aff'd and modified on other grounds,* 169 Wis.2d 1, 485 N.W.2d 217 (1992). In *Tempeis,* the Wisconsin court of appeals explained that the real ground of its holding in *Nemetz* was (emphasis added):

that Hazel's statement on the proof of loss that the cause of the fire was "unknown"

could not have been *material* where "[t]he insurer knew of Walter's admission as well as the investigators' theories as to the cause of the blaze."

*Id.* (citing *Nemetz*, 135 Wis.2d at 262, 400 N.W.2d 33.) Thus, contrary to Mr. Schley's suggestion, *Nemetz* is pertinent only with respect to determining the materiality of a misrepresentation, not the issue of reliance.

In addition, *Nemetz* is factually distinguishable from the instant case. In *Nemetz*, the insurer knew the insured's misstatement in the proof of loss was false when the misstatement was first made. In the instant case, American Family did not know that the representations made by Mr. Schley as to his whereabouts on the night of the fire were false *when they were made*.

No cogent evidence has been presented which demonstrates that American Family knew Mr. Schley's statements were fraudulent when they were provided at the June 6, 1995, or the July 24, 1995 interview. Indeed, Ms. Reese–Anderson testified that she did not begin her investigation until after the second interview on July 24, 1995. Consequently, I conclude that Mr. Schley's statements, when made, could, and did, invoke American Family's reliance and were material misrepresentations.

That American Family relied on Mr. Schley's statements is further evidenced by the fact that it used his statements concerning his activities as a starting point for its investigation of the fire. Such conduct on the part of American Family constitutes reliance as that term is defined under Wisconsin law. *See Brenneman v. Reddick*, 263 Wis. 454, 461, 57 N.W.2d 718 (1953) (reliance has occurred where a party "act[s] or refrain[s] from action" based on the misrepresentation).

■ To the extent that Mr. Schley's argument amounts to a contention that American Family must have paid his claim in order for it to prove reliance, it too is without merit. Mr. Schley cites no Wisconsin authority to support this proposition.

In such situations, I am permitted to consider decisions from other states in determining how the Wisconsin supreme court would

rule on the issue. *Shirley*, 69 F.3d at 843. In *J.C. Wyckoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1486 n. 16 (6th Cir.1991), the court of appeals for the sixth circuit, in construing Michigan law, has rejected the argument advanced by Mr. Schley. In *Wyckoff*, the insured provided false information in his proof of loss. The insurer investigated the claim based on the information in the proof of loss, discovered the information was false and then denied the claim. Although reliance was not an element of proof in the *Wyckoff* case, the court of appeals for the sixth circuit nevertheless explained that when the insurer proceeds to investigate a claim according to misrepresentations made by the insured it has "relied upon" the insured's misrepresentations even though it subsequently denies the claim. *Id.* The court of appeals reasoned that it would be unreasonable to require the insurer to sustain an "injury" of paying what it believes to be a fraudulent claim before it can assert fraud. *Id.*

In my opinion, the reasoning of the court in *Wyckoff* is consistent with the general law on reliance in Wisconsin. *See Brenneman*, 263 Wis. at 461, 57 N.W.2d 718. Further, I believe that a Wisconsin court would conclude that an insurer has relied on an insured's misrepresentations when it undertakes a substantial investigation based on the insured's statements.

Accordingly, I find that Mr. Schley's false statements to American Family about his activities at the time of the fire violate the "Concealment or Fraud" provision of the insurance policy. Therefore, American Family is entitled to deny coverage for Mr. Schley's claimed loss.

### B. Overvaluation in Proof of Loss

■ In his "Sworn Statement in Proof of Loss," Mr. Schley claimed that the barn which was destroyed by fire was worth $90,-000 and the silo was worth $5,000. Mr. Schley's insurance policy with American Family was an actual cash value policy. An independent appraisal conducted by American Family revealed that the actual value of the barn was estimated at $21,168.00 and the actual value of the silo was $680.00. Ameri-

can Family claims that Mr. Schley's overvaluation of his claim was an intentional misrepresentation such that it may properly deny coverage under the "Concealment or Fraud" provision of the policy.

"Overvaluation raises a presumption of fraud in proportion to the excess." *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.*, 27 Wis.2d 112, 124, 133 N.W.2d 737 (1965). A false statement in a sworn proof of loss must be knowingly and willfully made if it is to serve as the basis for a denial of a claim. *Id.*

In general, under Wisconsin law, it is unnecessary to show reliance on the part of the insurance company for any misrepresentation in a proof of claim. *See American Cas. Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1304 (7th Cir.1993) (citing Wisconsin cases). Nevertheless, in the instant case reliance is an element of American Family's proof. This is so because American Family's own contract, the insurance policy, expressly specifies that it must rely on an insured's misrepresentation before it can deny coverage pursuant to the "Concealment or Fraud" provision of the policy.

It is beyond dispute that the defendant's proof of loss did not reflect the actual market value of the property that was destroyed by the fire. However, there is evidence in the record which suggests that Mr. Schley's overvaluation may not have been intentional. Prior to submitting his sworn proof of loss, Mr. Schley consulted an American Family claims specialists, Deborah G. Gehring, and a certified public adjuster for assistance in determining what dollar amount should be placed in the proof of loss form. He testified that Ms. Gehring told him to put in the value he believed the property was worth and that the public adjuster advised him that the proof of loss should be based on what it would cost to *replace* the barn and silo.

The appraisal was ordered by American Family well *before* Mr. Schley submitted his sworn proof of loss. This fact also casts doubt on whether the overvaluation in the proof of loss was material or that it actually invoked American Family's reliance. In view of its high burden of proof (clear, satisfactory and convincing evidence), I find that American Family has not proved that it took action or refrained from taking any action based on Mr. Schley's misrepresentation in the proof of loss. *See Brenneman*, 263 Wis. at 461, 57 N.W.2d 718.

Consequently, American Family is not entitled to a declaration that Mr. Schley's overvaluation violates the "Concealment or Fraud" provision of the insurance policy.

### C. Intentional or Negligent Act

American Family seeks a declaration that Mr. Schley intentionally caused the fire on May 28, 1995, and that such conduct brings him within the policy's exclusions for intentional and negligent acts of the insured. As noted earlier in this decision, the American Family policy excludes coverage "for any insured who commits or directs an act with the intent to cause a loss" or for the "[n]eglect of an insured to use all reasonable means to protect covered property at and after the time of loss." (Ex. 1A, "Page 5 of 21.") In order to prevail on this claim, American Family is required to prove by clear, satisfactory and convincing evidence that Mr. Schley intentionally burned his property. *City of Madison v. Geier*, 27 Wis.2d 687, 691–692, 135 N.W.2d 761 (1965); *Ziegler v. Hustisford Farmers Mut. Ins. Co.*, 238 Wis. 238, 241, 298 N.W. 610 (1941). American Family has not met its burden of proof in this regard.

Mr. Schley's activities on the evening of May 27, 1995, and the early morning hours of May 28, 1995, may well have caused his insurer to be suspicious. His dismal financial condition and the fact that the insurance coverage on the barn was increased shortly before the fire are also circumstantial factors which contribute to this suspicion. Nevertheless, more than a suspicion or a suggestion of guilt is required to establish arson as a ground for denying coverage under a policy of insurance.

In my opinion, there are a number of facts in the record which, individually and collectively, prevent me from finding by clear, satisfactory and convincing evidence that Mr. Schley committed arson. In the instant case,

878

the investigators were unable to rule out accidental cause as the reason for the fire. Further, none of the investigators found or detected chemicals or any other substance at the site of the fire which could have been used to intentionally start the fire. Although Mr. Schley's rental car was driven a distance consistent with a round-trip from Minneapolis to Clintonville, the record contains no evidence placing him at or near the scene of the fire at any time over the Memorial Day weekend of 1995. The record also contains evidence suggesting that other persons could have had a role in starting the fire but were not investigated. Specifically, two brothers were suspects in a rash of arsons in the county in which Mr. Schley's property was located. (Defendant's Ex. 15.)

Because American Family has not met its burden of proof, it is not entitled to a declaratory judgment on its claim that Mr. Schley intentionally burned his property. This claim will also be dismissed.

### ORDER

Therefore, IT IS ORDERED that the plaintiff, American Family, be and hereby is entitled to a judgment, with costs, declaring that Mr. Schley is not entitled to coverage in connection with the May 28, 1995, fire loss because he made false statements to American Family investigators in violation of the "Concealment or Fraud" provision of the American Family insurance policy.

IT IS ALSO ORDERED that American Family's claim for a judgment declaring that Mr. Schley's overvaluation violates the "Concealment or Fraud" provision of the policy be and hereby is dismissed, with prejudice and without costs.

IT IS FURTHER ORDERED that American Family's claim for a judgment declaring that Mr. Schley's intentional burning of the barn falls within the "intentional act" or "neglect" exclusion of the policy be and hereby is dismissed, with prejudice and without costs.