SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| AMERICAN PEPPER SUPPLY COMPANY, | ) | Arizona Supreme Court |
| | ) | No.  CV-03-0290-PR |
| Plaintiff-Appellant, | ) | |
| Cross-Appellee, | ) | Court of Appeals |
| | ) | Division One |
| v. | ) | No.  1 CA-CV 00-0549 |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Maricopa County |
| | ) | Superior Court |
| Defendant-Appellee, | ) | No.  CV 98-004028 |
| Cross-Appellant. | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court in Maricopa County
The Honorable Barry C. Schneider, Judge

_____
**REVERSED AND REMANDED**
_____

Court of Appeals, Division One
Memorandum Decision (filed Jul. 24, 2003)

_____
**REVIEW DISMISSED**
_____

Opinion of the Court of Appeals, Division One
205 Ariz. 465, 72 P.3d 1284 (App. 2003)

_____
**VACATED IN PART**
_____

HERMAN, GOLDSTEIN & FORSYTH, P.C.                          Phoenix
     by   Keith B. Forsyth
     and  Evan S. Goldstein
Attorneys for Plaintiff-Appellant, Cross-Appellee

SANDERS & PARKS, P.C.                                      Phoenix
     by   Robert J. Bruno
     and  Mark R. Gilling
Attorneys for Defendant-Appellee, Cross-Appellant

HUMPHREY & PETERSEN, P.C.                                  Phoenix
     by   Andrew J. Petersen
Attorneys for Amicus Curiae
The Arizona Association of Defense Counsel
_____

**B E R C H**, Justice

¶1        We granted review to determine the appropriate burden for proving an insurer's policy defense of concealment or misrepresentation.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

BACKGROUND

¶2        On Tuesday, August 27, 1996, American Pepper Supply Company reported to its insurer, Federal Insurance Company, a theft of equipment left outside its building during the preceding weekend.  Within three weeks of American Pepper's initial report of the loss, Federal's investigation revealed facts and inconsistencies that rendered American Pepper's claim "suspicious":  (1) the equipment, which American Pepper claimed had a replacement value of more than $87,000, was left in an unfenced and unguarded area; (2) the equipment stolen was no longer used in American Pepper's business; (3) there were inconsistencies between American Pepper's initial reports and later reports to both the insurance company and the police as to the equipment reportedly stolen;[1] (4) American Pepper wanted to settle the claim quickly for two-thirds of the value of the equipment; and (5) American Pepper was not forthcoming regarding

---

[1]     For example, American Pepper initially reported that 600 galvanized steel meat hooks were stolen, but revised the number and quality to 3000 stainless steal meat hooks.

details of the acquisition of the equipment.  Federal therefore turned the claim over to its special investigation unit.

¶3      The investigation revealed that, contrary to American Pepper's initial reports that the equipment had been left on the ground outside its building, employees had actually left the equipment in a scrap metal salvage bin, which was discovered empty on Monday, August 26.   When confronted with the discrepancy, American Pepper's general manager claimed that the equipment had been stolen out of the bin, and that the bin was empty when National Metals, a metal recycler, picked up the bin on Tuesday, the day American Pepper reported the claim to Federal.  But further investigation revealed that when National Metals picked up the bin on Tuesday, it contained more than four tons of material.

¶4      On November 19, 1997, Federal sent a letter formally denying American Pepper's claim on the grounds that the investigation revealed "that [the equipment reported stolen] was sold for scrap metal" and that American Pepper "concealed or misrepresented material facts in the claim presentment process." Federal concluded that the claim was "not covered due to the misrepresentation/concealment provisions of the policy and under the law."[2]   Despite the denial of coverage, Federal invited

---

[2]    The concealment or misrepresentation provision states that "[t]his insurance is void if you or any other insured

- 3 -

American Pepper to submit for review and consideration any information "that has not been made available to us that would have a bearing on [Federal's coverage] decision."

¶5        Rather than submitting further information, American Pepper sued Federal, alleging breach of contract and bad faith. American Pepper asserted that the equipment had been stolen and that its employees had refilled the bin on Monday, after American Pepper discovered the theft.  Federal defended by asserting that American Pepper had not suffered a compensable loss and that American Pepper's representatives had concealed or misrepresented material facts concerning the theft of the equipment, thereby precluding coverage pursuant to the concealment or misrepresentation policy exclusion.

¶6        After being instructed by the trial court that Federal had to prove the policy defense of concealment or misrepresentation by "clear and convincing" evidence, the jury found in favor of American Pepper and awarded $15,000.  The court of appeals affirmed, concluding that Federal's defense was comparable to a claim of fraud and thus should be proved by clear and convincing evidence.  *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 205 Ariz. 465, 469-70, ¶ 18, 72 P.3d 1284, 1288-89 (App. 2003).  We granted review to determine the appropriate

---

intentionally conceals or misrepresents any material fact or circumstance relating to this insurance at any time."

burden by which an insurer must prove its policy defense of concealment or misrepresentation.

## DISCUSSION

**¶7** Federal argues that the trial court erred by instructing the jury that Federal had to prove its policy defense of concealment or misrepresentation by clear and convincing evidence rather than merely by a preponderance of the evidence. To warrant reversal, the jury instruction must have been not only erroneous, but "prejudicial to the substantial rights of the appealing party." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504, 917 P.2d 222, 233 (1996) (quoting *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982)).

**¶8** The appropriate burden of proof is a question of law, which this court reviews de novo. *See Nielson v. Patterson*, 204 Ariz. 530, 531, ¶ 5, 65 P.3d 911, 912 (2003) (approving de novo review of legal issues). Although a few jurisdictions require that exclusions from coverage be proved by clear and convincing evidence, the burden of proving insurance policy exclusionary provisions is usually a "preponderance of the evidence." Lee R. Russ & Thomas F. Segalla, 17 *Couch on Insurance* § 254:14 (3d ed. 2003) [hereinafter "*Couch*"]; *compare Rego v. Conn. Ins. Placement Facility*, 593 A.2d 491, 494-95 (Conn. 1991) (following the majority of courts and commentators suggesting that insurers

- 5 -

must prove policy defenses by a preponderance of the evidence), *with Am. Family Mut. Ins. Co. v. Schley*, 978 F. Supp. 870, 874-75 (E.D. Wis. 1997) (applying Wisconsin law, which requires that an insurer prove the policy defense of misrepresentation "by clear, satisfactory and convincing evidence").

¶9     By requiring clear and convincing proof in this case, the trial court and court of appeals adopted the minority approach.    In doing so, the court of appeals analogized Federal's defense to a charge of common-law fraud. *Am. Pepper Supply Co.*, 205 Ariz. at 469, ¶¶ 14, 16, 72 P.3d at 1288. Observing that allegations of concealment or misrepresentation implicitly charge the maker with "deceitful" conduct, the court reasoned that such allegations may harm an individual's reputation in the same way that allegations of fraudulent conduct do. *Id.* ¶ 15.    The court of appeals therefore concluded that it should require the defendant to meet the heavier burden of proving clear and convincing evidence to help prevent unwarranted harms to insureds' reputations caused by insurance policy defenses sounding in fraud. *Id.* ¶ 14 (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498 n.24, ¶ 98, 38 P.3d 12, 36 n.24 (2002)).

¶10    Such reasoning comports with the notion that "[t]he degree of proof should generally correspond to the elements

required to be proved before the insurer escapes liability.  The closer the elements come to intentional wrongdoing, the stricter the degree of proof is likely to be."  17 *Couch*, *supra* ¶ 8, § 254:94 (second "Observation").

**¶11**    Arizona has adopted this approach.  As explained in *State v. Renforth*, 155 Ariz. 385, 387, 746 P.2d 1315, 1317 (App. 1987), burdens of proof correlate positively with the significance of the interests at stake.  In a criminal case, for example, the state must prove guilt beyond a reasonable doubt, a heavy burden rooted in the belief that "it is far worse to convict an innocent [person] than to let a guilty [person] go free."  *Id.* (quoting *In re Winship*, 397 U.S. 358, 373 (1970)). The clear and convincing burden imposed on fraud claims similarly stems from the societal importance of an untarnished reputation.  *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 424 (1979)).   In a non-fraud civil case, however, an erroneous verdict for either party is no less unjust for one party than it would be if it were rendered for the opposing party.  *Id.* (quoting *In re Winship*, 397 U.S. at 372).   For that reason, civil claims generally need be established only by a preponderance of the evidence.

**¶12**    American Pepper cites several cases in support of its argument that a higher burden is appropriate when a defense sounds in fraud.  *See Sunseri v. Katz*, 53 Ariz. 234, 87 P.2d 797

- 7 -

(1939) (addressing suit to rescind a deed because of incapacity or fraud); *Cole v. Town of Miami*, 52 Ariz. 488, 83 P.2d 997 (1938) (addressing the Industrial Commission's alleged concealment of a worker's health condition in a worker's compensation case); *Kingsbury v. Christy*, 21 Ariz. 559, 192 P. 1114 (1920) (addressing fraudulent transfers in a debtor/creditor dispute); *Hall v. Warren*, 5 Ariz. 127, 48 P. 214 (1897) (same); *Rhoads v. Harvey Publ'ns, Inc.*, 145 Ariz. 142, 700 P.2d 840 (App. 1984) (addressing a claim sounding in tort resulting from an employment relationship); *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 631 P.2d 540 (App. 1980) (addressing whether the parol evidence rule bars evidence of fraud in the inducement); *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 619 P.2d 485 (App. 1980) (addressing a claim to rescind a real estate contract on the basis of fraudulent concealment of a material defect); *Douglas v. Vancouver Plywood Co.*, 16 Ariz. App. 364, 493 P.2d 531 (1972) (addressing formation of a real estate contract); *Ulan v. Richtars*, 8 Ariz. App. 351, 446 P.2d 255 (1968) (addressing a claim sounding in tort resulting from a real estate transaction). But none of these cases analyzes the distinction between the common law tort of fraud, for which a heavier burden of proof is usually imposed, and explicit contractual undertakings not to conceal or misrepresent, which are usually

- 8 -

proved by a preponderance of the evidence. None therefore provides a persuasive rationale for imposing the heavier burden in the insurance context.

¶13 Although we agree that allegations of concealment or misrepresentation, like allegations of fraud, may harm an insured's reputation, several countervailing concerns persuade us that for insurance contract defenses, the preponderance of the evidence standard properly balances the parties' and society's interests. First is ease of application. Applying an identical preponderance burden of proof for both the insured in establishing coverage and the insurer in establishing a contract defense will reduce juror confusion. This is especially true in a case like this one, in which the insurer's defense is simply the flip-side of the plaintiff's claim. A jury will more easily comprehend that the plaintiff-insured must prove "theft" and the defendant-insurer must prove "not theft" by the same legal standard.

¶14 Applying the same burden of proof to all contract defenses an insurer raises also simplifies the analyses for the jury. An insurer will often pursue in the same case several related policy exclusions, such as arson, dishonesty, and concealment or misrepresentation. *See*, *e.g.*, *Rego*, 593 A.2d at 491; *Am. Family Mut. Ins. Co.*, 978 F. Supp. at 874-75, 877. The distinction between "dishonesty" and "concealment or

- 9 -

misrepresentation" seems elusive at best and certainly is not one that supports the imposition of different burdens. Thus to require different burdens to establish them is unwarranted.[3] As another court succinctly explained, to require different burdens of proof for dishonesty, arson, and concealment or misrepresentation is "illogical and impractical." *Rego*, 593 A.2d at 494.

¶15 Second, we rely upon the inherent difference between the common-law tort of fraud, which is traditionally required to be established by clear and convincing evidence, and the contract defenses of concealment and misrepresentation, which most states require be proved by a preponderance of the evidence. In the former, a plaintiff sues for his justifiable reliance on a material misrepresentation by a defendant. In a contract defense case, however, it is the plaintiff himself who is charged with making the false statement — after having contractually obligated himself not to make such statements.

---

[3] The court of appeals suggested that imposing a lower burden for concealment or misrepresentation would create an inconsistency between the standard for determining "dishonesty" and the standard for determining "concealment or misrepresentation." *Am. Pepper Supply Co.*, 205 Ariz. at 469, ¶ 17, 72 P.3d at 1288. *Couch* suggests, however, that dishonesty exclusionary provisions are subject to a preponderance burden. 10 *Couch*, *supra* ¶ 8, § 149:56 (stating that generally all affirmative defenses are subject to a preponderance of the evidence burden). Because no dishonesty provision is at issue in this case, we reserve for another day the determination of the proper burden for proving that defense.

Indeed most insurance contracts affirmatively require insureds to deal fairly and in good faith with the insurer. In short, the societal concerns that support the imposition of the clear and convincing burden in common-law fraud cases do not support the imposition of the same burden with respect to contract defenses.

¶16    Third, applying the preponderance of the evidence burden to a concealment or misrepresentation defense comports with sound reason and is supported by major commentators in the field. *See*, *e.g.*, 22A Appleman, *Insurance Law and Practice* § 14062 (J. Appleman ed. 1979) (proposing a jury instruction for fraud in the context of insurance litigation using a preponderance of the evidence burden of proof); 10 *Couch*, *supra* ¶ 8, § 149:56 (stating that generally all affirmative defenses are subject to a preponderance of the evidence burden). Indeed, our own court of appeals has held that the defense of arson, which by its nature may impute fraudulent representations to the insured, must be proved only by a preponderance of the evidence. *Godwin v. Farmers Ins. Co. of Am.*, 129 Ariz. 416, 418-20, 631 P.2d 571, 573-75 (App. 1981).

¶17    Finally, although it is a minor consideration, we note that adopting the preponderance burden puts Arizona in the solid mainstream of jurisdictions that have decided this issue. *See Rego*, 593 A.2d at 494-95 (following the majority of courts and

commentators suggesting that insurers must prove policy defenses by a preponderance of the evidence); *accord* 17 *Couch*, *supra* ¶ 8, § 254:14.  Although joining the majority is not, by itself, reason for adopting a preponderance burden of proof, there is value in applying a uniform and consistent standard to commercial transactions.

¶18     We recognize that important interests motivate both insureds and insurers:  insureds wish to recover for legitimate claims and insurers wish to avoid paying invalid ones.  While we do not want to encourage insureds to submit fraudulent claims, we also do not want to make it easier for insurers to reject valid claims.  The tort of bad faith, however, protects the insured's interests against abuse in the latter case.  Given these legitimate interests and the remedy in place for abuse by insurers, we conclude that an equally applied preponderance burden is appropriate to properly balance the competing concerns.

¶19     Although plaintiffs worry that insurers will escape payment too easily, we do not see that application of the preponderance burden of proof has resulted in harmful consequences when applied to related contract defenses.  In *Godwin*, 129 Ariz. at 418-20, 631 P.2d at 573-75, for example, the court of appeals applied the preponderance burden to the contract defense of arson, which, like the defense of

concealment or misrepresentation, often involves the insured's concealment or misrepresentation of the true cause of the fire. In the nearly quarter century since that decision, we have seen no evidence that the application of the preponderance standard has led to a flood of denied claims or an onslaught of litigation.

¶20    Therefore, because we find that the integrity of jury deliberations outweighs the negligible potential for reputational harms and the equities are appropriately balanced by an equal burden, we conclude that the trial court erred by instructing the jury that Federal had to prove the contract defense of concealment or misrepresentation by clear and convincing evidence.   The burden of proving a concealment or misrepresentation exclusion is met by convincing a jury, by a preponderance of the evidence, that the insured has materially misrepresented its claim or concealed evidence that would permit a fair resolution of its claim.

¶21    Having concluded that the jury instruction requiring proof of the contract defense by clear and convincing evidence was erroneous, we must now determine whether that error prejudiced Federal's substantial interests.   *See Gemstar Ltd.*, 185 Ariz. at 504, 917 P.2d at 231.   In this case, the jury found that American Pepper established its breach of contract claim by a preponderance of the evidence, but did not find that Federal

proved concealment or misrepresentation by clear and convincing evidence. We cannot say that the jury might not have found concealment or misrepresentation by a preponderance of the evidence had it been properly instructed. For that reason we conclude that the erroneous jury instruction did prejudice Federal and a new trial is therefore required.

## CONCLUSION

¶22     The proper burden of proof applicable to a policy defense of concealment or misrepresentation is proof by a preponderance of the evidence. We therefore reverse the judgment on the breach of contract claim and vacate that portion of the court of appeals opinion addressing the burden of proof. We further remand American Pepper's breach of contract claim to the trial court for a new trial.[4]


_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____

[4]     The court of appeals opinion addressed another issue that was not the subject of this petition for review.

- 14 -