493 P.2d 531

George DOUGLAS et ux., Appellants,

v.

VANCOUVER PLYWOOD CO., a Washington corporation, Appellee.

No. 2 CA–CIV 1002.

Court of Appeals of Arizona, Division 2.

Feb. 3, 1972.

Rehearing Denied Feb. 24, 1972.

Review Denied April 4, 1972.

Hughes, Hughes & Conlan, by Coit I. Hughes, Phoenix, for appellants.

Robertson & Fickett, P. C., by Michael J. Meehan and Charles D. Wahl, Tucson, for appellee.

KRUCKER, Chief Judge.

Plaintiff, Vancouver Plywood Co., brought an action in the Superior Court of Pima County, to recover on a promissory note for $33,090.47. It was tried before the court without a jury, the Honorable Ben C. Birdsall presiding. The court entered 26 Findings of Fact and six Conclusions of Law on October 15, 1970. Judgment was entered for plaintiff on November 30, 1970, in the amount of $32,290.47, plus reasonable attorneys' fees of $8,000. This Judgment was amended on January 19, 1971 to the amount of $47,305.47, plus $8,000 in attorney's fees. From this Judgment the defendants, George Douglas and his wife, Cynthia Douglas, bring this appeal.

The facts out of which this action arose are, briefly, as follows. The plaintiff, Vancouver Plywood Co., is a Washington Corporation represented by Frost Snyder as president from 1935 to 1965. In April, 1959, Mrs. Frost Snyder was interested in developing a cattle operation in Mexico, specifically an area of Mexico where aliens are prohibited from owning property. To accomplish this, Mr. Frost Snyder caused a Limited Partnership to be known as Ganadera Mercantil R. C. L. to be,

formed of three Mexican Nationals. Mrs. Snyder and the plaintiff then made loans to the three limited partners for which the three gave promissory notes payable only out of partnership assets. The notes in like amounts to Mrs. Snyder and plaintiff were as follows: Pedro Del Villar, $20,000; Ernesto Camou, Jr., $10,000; Guillermo Cabrera, $10,000. The notes represented the ownership interests of Ganadera Mercantil and its properties and were only collectable from ranch properties with no personal liability on the part of the makers.

The partnership secured a 10-year lease on each of the two ranches known as Los Alisos and El Pozo. The proposed operation was to consist of bringing cattle from what are known as "dirty" zones to ranches in the "clean" zone where they would be held for a period of 60 days before being shipped to the United States.

In 1962 the cattle operation was having trouble, the Snyders thought because of a lack of experienced management. In searching for someone to purchase plaintiff's half of the operation, Snyder was directed to defendant, George Douglas, as an experienced rancher who might be interested. An agreement was then reached for defendant to purchase half of plaintiff's half interest and for a Bill Wootton to purchase the other half. An agreement was then drawn up among Mrs. Snyder with a half interest in the operation, Mr. Wootton with a fourth interest and defendant with a fourth interest. For the one-fourth interests, defendant and Mr. Wootton both signed notes to plaintiff in the amount of $33,090.47. This consideration was determined by an inventory and valuing (by Mr. Snyder, defendant Douglas and Mr. Wootton) of the liquid assets of the business (cattle, feed, equipment, cash, prepaid rent on the ranches, etc., but no value was given to the notes of the Mexican partners) and a deduction therefrom of all liabilities, leaving a total net value of $132,361.89. Defendant understood that the consideration paid represented one-fourth of this amount.

It is this note of defendant and the promise therein to pay reasonable attorneys' fees for any action necessary to collect that is the basis for this action and the Judgment.

In consideration for defendant's note, plaintiff delivered to defendant possession and operation of the business which defendant had retained until the time of this trial. In addition, plaintiff assigned all of its interest in the notes of the Mexican partners to enable defendant to control the business. Defendant understood that the purpose of the notes was to control the company (T 371).

Defendant-appellant's contentions on appeal are:

(1) Defendant's agreement to purchase plaintiff's business is void because it violates Art. 27 of the Constitution of Mexico which specifically provides that no alien shall own property within certain prohibited zones;

(2) There was a failure of consideration by plaintiff's failure to properly assign the promissory notes of the Mexican partners to the defendant;

(3) Defendant alleged as affirmative defense and in its counterclaim that plaintiff (a) misrepresented the size of Los Alisos ranch, (b) misrepresented that the notes of the Mexican partners carried personal liability and (c) failed to inform the defendant of a tax liability existing against the business at the time of the purchase and sale, and therefore the trial court erred in finding contrary to the evidence that this was not so;

(4) The trial court erred in failing to admit a survey map by which defendant sought to establish the actual size of the Los Alisos ranch.

## I. The Agreement Violates the Constitution of Mexico

While appellee's brief on appeal has dealt with and we think successfully refuted this contention by appellant, we think appellant-defendant's failure to raise the issue at the trial level makes judicial

abstention appropriate. This court has previously noted that appellate review of a case will ordinarily be limited to the theories tried in the court below. In re Estate of Taylor, 5 Ariz.App. 144, 424 P.2d 186 (1967). It is also recognized that the appellate court may raise the illegality of a contract *sua sponte*, Nutter v. Bechtel, 6 Ariz.App. 501, 433 P.2d 993 (1967), but where it would require our court's going outside the record to determine the applicable Mexican Law we are extremely reluctant to do so and believe the rule in *Taylor*, supra, applies. County of Cochise v. Beckman, 11 Ariz.App. 19, 461 P.2d 498 (1969).

## II. Assignment of the Notes of the Mexican Partners

With regard to this issue, the trial court found:

"17. In addition to the interest in the business, plaintiff assigned defendant and Mr. Wootton all of its interest in the notes of the Mexican partners, which *said assignment was sufficiently in compliance with Mexican law to enable defendant to control the business through this vehicle.* Such control never became necessary, since the three Mexican partners never interfered with defendant's ownership or operation of the business or made any claim therein." (Emphasis added).

■ The Court of Appeals is bound by the trial court's findings of fact unless they are *clearly erroneous.* Dietel v. Day, 16 Ariz.App. 206, 492 P.2d 455 (filed January 6, 1972); Zellerbach Paper Co. v. Valley National Bank, 13 Ariz.App. 431, 477 P.2d 550 (1970). We think this finding is entirely correct under the circumstances. Testimony by the parties to the agreement, including defendant Douglas (T 371), was that the purpose of these notes was to enable Mrs. Snyder, Mr. Wootton and defendant to control the company. The notes carried no personal liability of the makers and were only enforceable against the properties of the ranch. No demand was ever made by the defendant on the notes and there was no reason for such a demand since at all times after this agreement defendant has been in possession and control of the assets of Ganadera Mercantil. There was no lack of consideration to defendant since the tangible assets represented by the notes have continued to be in his possession.

■ Even without regard to the above agreement by the parties, we think the trial court was correct in finding sufficient compliance with Mexican Law to make the assignment valid. The trial court ruled correctly that these were "nominative instruments" under the Commercial Code of Mexico and not civil credits under the Civil Code. Mr. Del Villar, a corporate and commercial attorney in Mexico since 1935, testified (T 483) that the Commercial Code governed the notes in issue. Extracts of a translation of the Mexican Commercial Code were admitted into evidence as plaintiff's exhibits 26 and 27. Exhibit 27 under Credit Instruments, Part II, Article 23, defines "nominative instruments" as "those issued in favor of a person whose name is stated in the text of the document." Articles 26 and 27 of the Commercial Code provide for transfer of nominative instruments:

"by endorsement and delivery of the document itself, *without prejudice to their being transferred by any other legal means.* The transfer by . . . any other legal means than endorsement subrogates the acquirer to all the rights which the instrument confers, but subjects him to all the personal exceptions which the obligor would have been able to oppose against the transferor before the transfer." (Emphasis added)

While the notes were not endorsed on the documents, we find, as the trial court did, that the transfer (Assignment—Exhibit B) was properly made by other legal means.

## III. Fraudulent Misrepresentations

■ Defendant, as its affirmative defense, and in a counterclaim alleged fraud-

ulent misrepresentation by the plaintiff of: (1) the size of Los Alisos Ranch; (2) the personal liability of the Mexican partners on their notes and (3) a tax liability existing against the company, of which defendant was not informed.

The trial court's findings of fact in this regard were that the defendant had understood that the notes of the Mexican partners carried no personal liability, that plaintiff reasonably believed the size of Los Alisos to be as stated in the lease and had no intent to deceive defendant as to its size,[1] and that plaintiff's failure to inform defendant of the possible tax liability was an "unintentional oversight" and did not constitute a material misrepresentation, but the defendant's note should be reduced by $800, his share of the total tax liability of $3200 against the partnership.[2]

The trial court's conclusion of law from these findings was that:

"3. Defendant has failed to prove by clear and convincing evidence any fraud either actual or constructive on the part of the plaintiff."

We have reviewed the entire record including the six volumes of testimony and we find reasonable support in the evidence for the trial court's finding of fact, and we would reach the same legal conclusion from these facts.

## IV. Exclusion of the Survey Map of Los Alisos

We find no prejudice to defendant by the trial court's exclusion of the offered survey map of Los Alisos since the fact that Los Alisos was considerably smaller than represented in the lease is established by other evidence.

## CONCLUSION

For the foregoing reasons we affirm the trial court's Judgment and pursuant to the second paragraph of defendant's note we think the appellee-plaintiff should be allowed reasonable attorneys' fees in defense of this appeal. Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636 (1961). It is therefore ordered that the plaintiff be and it is hereby awarded judgment against the defendants in the additional sum of $1,500.

HATHAWAY and HOWARD, JJ., concur.

---

1. "Finding 22. The lease for the Los Alisos Ranch recited acreage of 10,500 hectares owned by the lessor and 2,000 hectares communal lands. Relying on this acreage stated in the lease, plaintiff informed defendant prior to the sale that this was the size of that leased ranch. Actually this size was probably much less. Plaintiff believed the acreage to be as stated in the lease, having never caused any survey to be made or done anything else to determine the acreage more exactly. Plaintiff did not intend defendant to rely and act upon its representation as to the acreage, did not know such representation was false, and believed it to be true. Plaintiff did not intend to deceive or mislead defendant in this regard, and the representation was not made recklessly or without reasonable grounds to believe that it was true."

2. "Finding 21. A contingent liability of the partnership at the time of the sale to defendant was an undetermined amount for taxes arising on account of the sale of cattle. Plaintiff did not include this item as a liability at the time of the sale, although plaintiff had knowledge of its existence. The failure to include this liability was an unintentional oversight on plaintiff's part and did not constitute a material misrepresentation to the defendant. Plaintiff had no intent to defraud defendant with reference to this item. Defendant subsequent to the sale was required to pay said taxes, the total payment for the partnership being in the amount of $3,200.00, plaintiff's [defendant's] share being $800.00. Had this amount been known at the time of the sale the purchase price to defendant would have been reduced on account thereof, and defendant's note would have been in the amount of $32,290.47 only, and defendant should now be given credit for such $800.00 by reducing the note principal to such amount ab initio."