390 P.3d 378

Jeffrey **GULLETT**, Special Administrator of the Estate of Winford Gullett, ON BEHALF OF the ESTATE OF Winford **GULLETT**, and Jeffrey Gullett, Special Administrator, for and on behalf of Winford Gullett's statutory beneficiaries pursuant to A.R.S. § 12–612(a), Plaintiff/Appellant,

v.

**KINDRED NURSING CENTERS WEST**, L.L.C., a Delaware limited liability company, dba Hacienda Rehabilitation and Care Center nka Kindred Nursing and Rehabilitation–Hacienda; Kindred Healthcare Operating, Inc., a Delaware corporation; Kindred Healthcare, Inc., a Delaware corporation; and Theresa Linnane, Administrator, Defendants/Appellees.

No. 2 CA–CV 2016–0049

Court of Appeals of Arizona, Division 2.

Filed February 15, 2017

534

Law Office of Scott E. Boehm, P.C., Phoenix, By Scott E. Boehm and Wilkes & McHugh, P.A., Scottsdale, By Melanie L. Bossie, Mary Ellen Spiece, and Ernest J. Calderon II, Counsel for Plaintiff/Appellant

Quintairos, Prieto, Wood & Boyer, P.A., Phoenix, By Anthony J. Fernandez, Vincent J. Montell, and Rita J. Bustos, Counsel for Defendants/Appellees

Judge Staring authored the opinion of the Court, in which Presiding Judge Howard and Judge Espinosa concurred.

## OPINION

STARING, Judge:

¶1 Jeffrey Gullett appeals the judgment compelling arbitration of his statutory claim for abuse and neglect of his late father Winford Gullett pursuant to Arizona's Adult Protective Services Act (APSA), A.R.S. §§ 46–451 to 46–459. He argues the arbitration agreement is substantively unconscionable and, alternatively, the trial court erred in failing to allow discovery and grant an evidentiary hearing on his claims of procedural unconscionability. For the reasons that follow, we affirm in part, vacate in part and remand for further proceedings.[1]

---

1. We also deny Gullett's December 13, 2016 motion requesting that we take judicial notice of a minute-entry ruling in *Johnston v. Kindred Nursing Centers West, LLC,* CV201600206 in Cochise County Superior Court.

## Factual and Procedural Background

¶ 2 In January 2013, Winford Gullett was admitted to Hacienda Care and Rehabilitation Center ("Hacienda"). On January 16, he signed an Alternative Dispute Resolution Agreement ("Agreement") that provides all claims arising out of any stay at Hacienda shall be submitted to arbitration. Winford remained at Hacienda until his death on February 21, 2013.

¶ 3 In February 2015, Jeffrey Gullett brought suit against appellee Kindred Nursing Centers West, L.L.C., doing business as Hacienda ("Kindred"), alleging it had abused and neglected Winford in violation of APSA, resulting in his death.[2] Kindred subsequently moved to compel arbitration pursuant to the Agreement. Gullett opposed the motion, claiming the Agreement was substantively unconscionable and discovery was required on the issue of procedural unconscionability.

¶ 4 Following a hearing in October 2015, the trial court granted Kindred's motion to compel arbitration and denied Gullett's request for an evidentiary hearing on the issue of procedural unconscionability. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1). *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶¶ 16-20, 977 P.2d 769, 774-75 (1999) (order compelling arbitration appealable if certified pursuant to Rule 54(b), Ariz. R. Civ. P.).

## Discussion

¶ 5 Gullett argues the Agreement is substantively unconscionable because it "severely limits discovery," requires that arbitration be administered by an administrator who "lacks neutrality," requires the forfeiture of non-waivable remedies, and does not impose mutual obligations on the parties.[3] He further argues the court erred by denying his request for an evidentiary hearing because he is entitled to conduct discovery to develop his claim of procedural unconscionability.

¶ 6 "The validity and enforceability of a contract and arbitration clause are mixed questions of fact and law, subject to de novo review." *Estate of DeCamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, ¶ 9, 316 P.3d 607, 609 (App. 2014). Pursuant to A.R.S. § 12-3006(A), "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of the contract." Accordingly, "[a]n arbitration agreement ... is subject to the same defenses to enforceability as any other contract." *Dueñas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, ¶ 6, 336 P.3d 763, 768 (App. 2014). Claims of substantive or procedural unconscionability are independent defenses to enforceability. *Id.* ¶ 7.

## Substantive Unconscionability

¶ 7 "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995). In determining whether a contract is substantively unconscionable, we look to see whether the "contract terms [are] so one-sided as to oppress or unfairly surprise an innocent party," whether there is "an overall imbalance in the obligations and rights imposed" by the contract, or whether there is a "significant cost-price disparity." *Id.* "The rules of contract interpretation apply equally in the context of arbitration clauses." *Estate of DeCamacho*, 234 Ariz. 18, ¶ 15, 316 P.3d at 611; *see also City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 189, 877 P.2d 284, 288 (App. 1994) ("Because of the public policy favoring arbitration, arbitration clauses are construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration.").

## Discovery

¶ 8 Gullett first argues the Agreement is substantively unconscionable "be-

---

2. Gullett's wrongful-death claim against Kindred is not subject to the Agreement, and has been stayed pending arbitration of the APSA claim.

3. Because we conclude the Agreement is not substantively unconscionable, we do not address Gullett's argument concerning severability.

cause it so limits discovery (and therefore witnesses) that [he would] be unable to prepare and present his APSA claims." "[A]rbitration is appropriate only '[s]o long as the prospective litigant effectively may vindicate' his or her rights in the arbitral forum." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, ¶ 42, 119 P.3d 1044, 1055 (App. 2005), *quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (alteration in *Harrington*). But, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647, *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). And, as our courts have consistently explained, "the primary purpose of arbitration is to provide an inexpensive and speedy final disposition of disputes, as an alternative to litigation." *Harrington*, 211 Ariz. 241, ¶ 42, 119 P.3d at 1055.

▮ ¶ 9 Prospective litigants "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim," *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 684 (2000), *criticized on other grounds by AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 340, 352, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), as part of being able to effectively vindicate their rights, *see Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647. "'[A]dequate' discovery does not mean unfettered discovery," however. *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 13 Cal.Rptr.3d 88, 97 (2004), *quoting Mercuro v. Superior Court*, 96 Cal.App.4th 167, 116 Cal.Rptr.2d 671, 683 (2002). Further, parties may agree to something less than the amount of discovery provided by the rules of civil procedure. *See id.*

¶ 10 The Agreement provides:

Discovery may be initiated immediately after the Request is filed. The parties shall have the right to engage in discovery consistent with the Arizona Rules of Civil Procedure, subject to any restrictions contained in the applicable statutes, rules, and regulations ..., and also subject to Rule

3.02 of the [Kindred Healthcare Alternative Dispute Resolution Rules of Procedure ("Kindred's Procedure") ].

Kindred's Procedure limits discovery to the following:

Permissible discovery shall include: a) 30 interrogatories inclusive of subparts; b) 30 requests for production of documents inclusive of subparts; c) 10 requests for admissions inclusive of subparts; d) depositions of not more than six (6) fact witnesses, and e) depositions of not more than two (2) expert witnesses.

Where warranted, by agreement or by request to the presiding neutral, the parties may conduct such additional reasonable discovery as may be necessary or proper.

Gullett argues APSA claims typically require the testimony of "dozens of nursing home employees and experts from many professional fields" and usually involve "hundreds" of documents. Accordingly, he claims the limitations placed on him by Kindred's Procedure force him to "'proceed blindly' or forego the claims altogether, which (of course) is the nursing home's desired result."

▮ ¶ 11 In determining whether discovery limitations interfere with a litigant's ability to vindicate their claims, courts have considered the initial amount of discovery permitted as of right in conjunction with the burden imposed on the litigant in obtaining additional discovery. *See Ontiveros v. DHL Express (USA), Inc.*, 164 Cal.App.4th 494, 79 Cal.Rptr.3d 471, 487 (2008), *abrogated on other grounds as recognized by Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 171 Cal.Rptr.3d 621, 635–36 (2014). Discovery provisions may be substantively unconscionable when the amount of permitted discovery is so low and the burden to obtain additional discovery so high that the litigant is effectively unable to vindicate their claim. *See id.* ("We conclude that ... the permitted amount of discovery is so low while the burden for showing a need for more discovery is so high that plaintiff's ability to prove her claims would be unlawfully thwarted by the discovery provision in the agreement."); *Fitz*, 13 Cal.Rptr.3d at 97–100.

¶ 12 Kindred's Procedure permits relatively expansive discovery. Litigants are allowed thirty interrogatories, only ten less than the amount permitted under Rule 33(a)(2), Ariz. R. Civ. P., allowed thirty document production requests, compared to the ten requests permitted by Rule 34(b)(1), Ariz. R. Civ. P., and allowed ten admission requests, compared to the twenty-five permitted under Rule 36(a)(3), Ariz. R. Civ. P. They may obtain the depositions of six "fact" witnesses and two expert witnesses. Litigants may also conduct additional "reasonable discovery" by agreement or as permitted by the arbitrator as long as such discovery is "necessary or proper." *See Dotson v. Amgen, Inc.*, 181 Cal. App.4th 975, 104 Cal.Rptr.3d 341, 349 (2010) ("We assume that the arbitrator will operate in a reasonable manner in conformity with the law.").

¶ 13 The discovery limitations imposed by the Agreement therefore are not as restrictive as those found in the cases on which Gullett primarily relies. In *Fitz*, for example, the employee-dispute resolution policy limited discovery to the depositions of two individuals and any expert expected to testify at the arbitration hearing. 13 Cal.Rptr.3d at 91–92. Any additional discovery was permitted only on the condition the arbitrator found "a compelling need to allow it," and only after concluding "a fair hearing [would be] impossible without additional discovery." *Id.* (emphasis omitted). The court concluded the policy "fail[ed] to ensure that Fitz [was] entitled to discovery sufficient to adequately arbitrate her claims," because

> the burden the ... policy imposes on the requesting party is so high and the amount of discovery the policy permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery.

*Id.* at 98, 100.

¶ 14 In *Ontiveros*, each party was limited to one deposition of an individual and any expert witness designated by another party. 79 Cal.Rptr.3d at 476. Additional discovery could only be obtained by request to the arbitrator and only "upon a showing of substantial need." *Id.* The court found these terms unconscionable because the amount of permitted discovery was "so low while the burden for showing a need for more discovery [was] so high." *Id.* at 487.

¶ 15 Similarly, in *Ostroff v. Alterra Healthcare Corp.*, a personal injury suit against an assisted-living facility, the plaintiff was permitted to depose only the defendant's expert witness and none of the defendant's employees or any of the other residents at the facility. 433 F.Supp.2d 538, 540, 545 (E.D. Penn. 2006). These limitations put the plaintiff "at a distinct disadvantage in arbitration, which ... may well [have denied] her a 'fair opportunity to present [her] claims.'" *Id.* at 545, *quoting Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647 (alteration in *Ostroff*). The court found the discovery limits substantively unconscionable. *Id.* at 546.

¶ 16 Here, as noted, Kindred's Procedure allows for significant amounts of written discovery and depositions as a matter of right. And litigants may obtain additional "reasonable discovery" upon showing it is "necessary or proper." The amount of discovery is not so low and the burden to obtain more so high that the Agreement denies litigants the opportunity to conduct discovery sufficient to adequately arbitrate an APSA claim. *Cf. Dotson*, 104 Cal.Rptr.3d at 347–50 (reversing unconscionability finding where agreement permitted one deposition of an individual and expert designated by opposing party and additional discovery "upon a showing of need"). The terms of the Agreement are not "so one-sided as to oppress or unfairly surprise an innocent party." *See Maxwell*, 184 Ariz. at 89, 907 P.2d at 58. We therefore conclude the trial court did not err in rejecting Gullett's claim that the Agreement is unconscionable in this respect.

**Arbitration Administrator**

 ¶ 17 Gullett next argues Kindred has "'stacked the deck' against [him] by mandating arbitrations be administered by ... DJS Administrative Services, who handle[ ] everything from opening claims to hiring and scheduling arbitrators from the 'approved'

list." According to Gullett, the administrator "lacks neutrality because [it] is financially dependent on defendants ..., who pay [its] bills and provide most of [its] business."

¶ 18 A neutral arbitrator is no less crucial to the effective vindication of rights in arbitration than an impartial judge is in a courtroom. This is evident from the statutes mandating disinterested arbitrators, A.R.S. § 12–3011(B), and the disclosure of interests and relationships, A.R.S. § 12–3012, and from statutes providing remedies in the event an award is procured from an arbitrator who demonstrates partiality, A.R.S. §§ 12–3023(A)(2) and 12–1512(A)(2). Additionally, as noted, contract terms that are "so one-sided as to oppress or unfairly surprise an innocent party, [or create] an overall imbalance in the obligations and rights imposed by the bargain," are unconscionable. *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58. It stands to reason, then, that arbitration terms that by themselves create a partial forum would be similarly unconscionable for failure to provide a person with the ability to effectively vindicate their rights before a neutral arbitrator. *See Falcone Bros. & Assocs., Inc. v. City of Tucson*, 240 Ariz. 482, ¶ 21, 381 P.3d 276, 283 (App. 2016) ("[A]rbitration agreements are unconscionable and unenforceable when they give an employer unrestricted control over the selection of arbitrators such that the employer's own managers can serve as the sole decision makers in the dispute."); *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 30, 795 P.2d 1308, 1313 (App. 1990) (arbitration provisions clearly lacking mutuality void for lack of consideration).

¶ 19 In *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004), the Sixth Circuit addressed the enforceability of the arbitrator-selection procedure in an employer's termination appeal procedure (TAP) for its employees. The TAP "requir[ed] binding arbitration of all disputes arising out of termination of employment." *Id.* at 487. Once an arbitration hearing was requested, the TAP granted the company "the right to unilaterally select a pool of at least five potential arbitrators," and, "[t]hen, counsel for the company and the aggrieved employee mutu-

ally select[ed] an arbitrator from that pool by alternatively striking names until only one remain[ed]." *Id.* at 488. The court concluded the selection process gave the company exclusive control of the arbitrator panel and allowed it to create a "symbiotic relationship with its arbitrators" susceptible to "promulgat[ing] bias." *Id.* at 493. Accordingly, the procedure prevented the arbitration agreement "from being an effective substitute for a judicial forum because it inherently lack[ed] neutrality." *Id.* at 494. The court rejected the employer's argument that the "preferred method of challenging allegations of bias" would be to address them after the end of the arbitration process. The court reasoned that, "[w]hen the process used to select the arbitrator is fundamentally unfair ... the arbitral forum is not an effective substitute for a judicial forum, and there is no need to present separate evidence of bias or corruption in the particular arbitrator selected." *Id.* at 494 n.7.

¶ 20 In this case, the Agreement provides arbitration "will be conducted by an independent impartial entity that is regularly engaged in providing mediation and arbitration services." It also provides "DJS Administrative Services, Inc., ... *may* serve as this independent entity." (Emphasis added.) And should DJS be "unwilling or unable to conduct the ... arbitration, or the parties mutually agree that DJS should not conduct the ... arbitration, then by mutual agreement the parties shall select another independent impartial entity that is regularly engaged in providing ... arbitration services." Furthermore, regardless of which entity serves as administrator, Kindred's Procedure allows the parties to attempt to reach a consensus as to the presiding arbitrator.

> Upon receipt of a Demand by a party to commence the ADR process, the parties shall proceed to select ... an arbitrator.... If the parties are unable to agree on an arbitrator then each party shall select an arbitrator and the two selected will choose a third who will serve as the presiding arbitrator.

Gullett is not limited to selecting an arbitrator from a list of arbitrators crafted by Kindred. *See McMullen*, 355 F.3d at 488, 493–94

(unconscionable where company could unilaterally select pool of arbitrators); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938–39 (4th Cir. 1999) (unconscionable where arbitrators selected from list created exclusively by employer).

¶ 21 The selection process in the Agreement is similar to the procedure in *Bonded Builders Home Warranty Ass'n of Texas v. Rockoff*, No. 08–14–00090–CV, 509 S.W.3d 523, 2016 WL 3383461 (Tex. App. June 16, 2016). There, a homeowner, a home warranty provider, and a builder entered into a contract that required disputes to be resolved by arbitration. *Id.* at 528–29, 2016 WL 3383461, at *2. The agreement permitted the homeowner to select an arbitration company from a list of approved arbitration companies provided for by the warranty provider. *Id.* The Texas Court of Appeals, applying the standard from *McMullen*, did not find the terms facially unconscionable. *Id.* at 535–37, 2016 WL 3383461, at *8. The court considered the agreement's terms, which "requir[ed] the arbitration to be before a neutral third party," and precluded the warranty provider "from designating a captive arbitration company as a potential source for arbitrators." *Id.* The court also considered the availability of remedies should "the arbitrator fail[ ] that neutrality standard." *Id.* Lastly, the court noted *McMullen* and other federal cases had "invalidated schemes where one party designated a pool of specific *arbitrators*," whereas the agreement before them "designate[d] potential *arbitration companies*." *Id.* And, although the court recognized the possibility that the defendant "might only designate arbitration companies with only a few available arbitrators whom it trusts," nothing in the record suggested the company had done so in the past, and the court would not find unconscionability based only on "speculation." [4] *Id.*

¶ 22 Similarly, the Agreement here requires the arbitration "be conducted by an independent impartial entity," precluding Kindred from designating a captive arbitra-

tion company or a specific arbitrator.[5] And the Agreement does not require DJS Services to be the administrator of the arbitration. We agree with the trial court that Kindred's Procedure for selecting an arbitrator is not fundamentally unfair, and, thus, not unconscionable.

### Forfeiture of Remedies

■ ¶ 23 Gullett also maintains the Agreement is unconscionable because it requires forfeiture of statutory remedies not subject to waiver. We do not address this issue, however, because Gullett failed to raise the argument in the trial court. *See Winters v. Ariz. Bd. of Educ.*, 207 Ariz. 173, ¶ 13, 83 P.3d 1114, 1118 (App. 2004); *Douglas v. Vancouver Plywood Co.*, 16 Ariz.App. 364, 367, 493 P.2d 531, 534 (1972) (appellate review ordinarily "limited to those theories tried in the court below").

### Mutuality

■ ¶ 24 Additionally, Gullett claims the Agreement is unconscionable because although on its face it appears to be mutual, "it actually is not because [Kindred has] no claims for which [it is] giving up [its] rights to full discovery, judicial resolution and appeal." According to Gullett, only residents are subject to "abuse or neglect," and, therefore, "in actual practice, [Kindred has] no claims."

■ ¶ 25 Preliminarily, "[s]ubstantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58. The Agreement requires both Kindred and Gullett to submit to arbitration in the event of a dispute. It provides:

> Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at the Facility including disputes regarding the interpretation of this Agreement, . . . whether for statutory, compensatory or punitive dam-

---

4. Gullett has not provided any evidence that any of the arbitrators listed as connected to DJS Services are provided by Kindred to DJS Services.

5. Arizona also provides remedies in court should an arbitrator fail to be impartial or engage in other misconduct. *See* §§ 12–3023(A)(2) and 12–1512(A)(2).

ages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation, any claim based on violation of rights, negligence, medical malpractice, any other departure from the accepted standards of health care or safety or unpaid nursing home charges) ... shall be submitted to alternative dispute resolution as described in this Agreement.

These terms reflect a mutual obligation to arbitrate, and the concerns we expressed in *Stevens/Leinweber/Sullens, Inc.*, do not exist here. 165 Ariz. at 30, 795 P.2d at 1313 (voiding arbitration provision allowing one party "absolute option of selecting either arbitration or litigation as the means of dispute resolution"). Kindred does not preserve for itself the right to opt out of the Agreement. Rather, it agrees to resolve all disputes, including "breach of contract [and] tort," through arbitration. Accordingly, the Agreement is not unconscionable for lack of mutuality.

### Procedural Unconscionability

¶ 26 We now turn to Gullett's assertion he is entitled to discovery to develop a defense of procedural unconscionability. "Procedural unconscionability addresses the fairness of the bargaining process," including such concerns as " 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Dueñas*, 236 Ariz. 130, ¶ 8, 336 P.3d at 768, *quoting Clark v. Renaissance W., L.L.C.*, 232 Ariz. 510, ¶ 8, 307 P.3d 77, 79 (App. 2013). Gullett argues he "does not know the facts supporting procedural unconscionability because [his father] is dead and the trial court would not allow [him] to take discovery on this or any other enforcement defense." Kindred counters he "failed to present any evidence and/or facts substantiating [any] alleged 'suspicions' that

the ... Agreement might be procedurally unconscionable." Kindred asserts Gullett "was required to provide something more than his 'suspicions' [to] the trial court to support the claim of procedural unconscionability but failed to do so." [6] We review a trial court's refusal to grant an evidentiary hearing for an abuse of discretion. *Pioneer Fed. Sav. Bank v. Driver*, 166 Ariz. 585, 589, 804 P.2d 118, 122 (App. 1990).

¶ 27 In *Ruesga v. Kindred Nursing Centers West, L.L.C.*, we noted "courts 'have repeatedly analogized a trial court's duty in ruling on a motion to compel arbitration to its duty in ruling on a motion for summary judgment.' " 215 Ariz. 589, ¶ 23, 161 P.3d 1253, 1260 (App. 2007), *quoting Ex parte Greenstreet, Inc.*, 806 So.2d 1203, 1207 (Ala. 2001). "[T]he court initially determines whether material issues of fact are disputed and, if such factual disputes exist, then conducts an expedited evidentiary hearing to resolve the dispute." *Id.* ¶ 24, *quoting Haynes v. Kuder*, 591 A.2d 1286, 1290 (D.C. 1991) (internal quotation marks omitted). In *Ruesga*, however, we did not address the question of whether a party opposing arbitration is entitled to conduct discovery for the limited purpose of establishing whether there exists a material issue of fact concerning procedural unconscionability.[7] We do so now.

¶ 28 Because of the similarity in approach, we look to case law concerning motions for summary judgment. To obtain summary judgment, "the moving party must come forward with evidence it believes demonstrates the absence of a genuine issue of material fact and must explain why summary judgment should be entered in its favor." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, ¶ 14, 180 P.3d 977, 980 (App. 2008). Once a moving party meets its initial burden of production, the burden shifts to the non-moving party "to present sufficient evidence demon-

---

**6.** The Agreement possesses attributes generally not indicative of procedural unconscionability. It is a separate document, and is not contained within any other agreement. *See Dueñas*, 236 Ariz. 130, ¶ 11, 336 P.3d at 769 (arbitration agreement not "inconspicuously bundled with other contractual terms"). It also states it "is not a precondition of admission or to the furnishing of services" and "may be cancelled by the resi-

dent" within thirty days of execution. *See id.* ¶¶ 11, 20.

**7.** We therefore disagree with Kindred's assertion during oral argument in this court that *Ruesga* fully disposes of the issue whether Gullett is entitled to conduct discovery concerning procedural unconscionability.

strating the existence of a genuine factual dispute as to a material fact." *Id.* ¶ 26. The nonmoving party must point out ignored or overlooked evidence or explain why the motion should otherwise be denied.[8] *Id.*; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (summary judgment granted if party cannot respond with evidence demonstrating genuine issue of fact).

¶ 29 Although Rule 56(b)(2), Ariz. R. Civ. P., permits a defendant to move for summary judgment "at any time after the action is commenced," a claimant is ordinarily entitled to a reasonable opportunity to conduct discovery in order to obtain evidence with which to oppose the motion. *See Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("after adequate ... discovery and upon motion" summary judgment mandated when party "fails to make a showing sufficient to establish" essential element of case); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) ("Because summary judgment can be supported or defeated by citing a developed record, courts must give the parties 'adequate time for discovery.' "), *quoting Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105–06 (9th Cir. 2000) ("The nonmoving party, of course, must have had sufficient time and opportunity for discovery before a moving party will be permitted to carry its initial burden of production by showing that the nonmoving party has insufficient evidence."); *Nat'l Bank of Ariz.*, 218 Ariz. 112, ¶ 24, 180 P.3d at 983 (non-moving party must receive "sufficient opportunity for discovery" before summary judgment granted for insufficient evidence).

 ¶ 30 Rule 26(b)(1), Ariz. R. Civ. P., provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to ... any party's claim or defense and proportional to the needs of the case." And the discovery rules "should be broadly and liberally construed to ... promote justice."

*U–Totem Store v. Walker*, 142 Ariz. 549, 552, 691 P.2d 315, 318 (App. 1984). "There seems to be little reason why litigants should be prevented from establishing legitimate claims in actions in which the admissible facts are to be found only in the files and minds of opposing parties." *Id.* at 553, 691 P.2d at 319, *quoting* Jack H. Friedenthal, *A Divided Supreme Court Adopts Discovery Amendments to the Federal Rules of Civil Procedure*, 69 Calif. L. Rev. 806, 817 (1981).

 ¶ 31 Further, "[a]lthough it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co.*, 194 Ariz. 47, ¶ 11, 977 P.2d at 773; *see also Dueñas*, 236 Ariz. 130, ¶ 6, 336 P.3d at 768 (arbitration agreement subject to same enforceability defenses as other contracts); *Clark*, 232 Ariz. 510, ¶ 8, 307 P.3d at 79 (unconscionable contract unenforceable). "Given that '[t]he burden of proving a generally applicable contract defense lies with the party challenging the contract provision,' " the need for pre-arbitration discovery to determine whether an agreement to arbitrate was obtained under procedurally unconscionable conditions "is evident." *Guidotti*, 716 F.3d at 774 n.5 (citing cases where pre-arbitration discovery permitted to determine issues of unconscionability and whether parties agreed to arbitrate), *quoting Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 274 (3d Cir. 2004). Accordingly, "a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given an opportunity to conduct limited discovery on the narrow issue concerning the validity of the ... agreement." *Id.* at 774 (citations and internal quotation marks omitted).

 ¶ 32 This approach is consistent with the requirement that when determining "whether an arbitration agreement is proce-

---

8. Rule 56(d)(5)(A), Ariz. R. Civ. P., permits a party opposing summary judgment to obtain discovery upon making the showing required by the rule. *See Simon v. Safeway, Inc.*, 217 Ariz. 330, ¶ 6, 173 P.3d 1031, 1034 (App. 2007); *Grand v. Nacchio*, 214 Ariz. 9, ¶ 72, 147 P.3d 763, 783 (App. 2006). Because we conclude a party opposing a motion to compel arbitration is entitled to discovery on the issue of procedural unconscionability, we do not analyze the issue under Rule 56(d).

durally unconscionable, [a] court must examine each transaction on its own facts." *Dueñas*, 236 Ariz. 130, ¶ 9, 336 P.3d at 768; *see also Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 153, 840 P.2d 1013, 1018 (1992) (examining specific facts of case to find arbitration agreement unenforceable). Only Gullett's father and Kindred's representative were present when Kindred entered into the Agreement with Gullett's father, a man requiring in-patient care because of serious health problems, and who died approximately one month later. Gullett therefore cannot oppose arbitration on the basis of procedural unconscionability without being permitted limited discovery on that issue. The ability to mount a procedural unconscionability defense to arbitration should not depend on something as fortuitous as whether the individual who signed the agreement remains able to testify.

¶ 33 Limited discovery on the issue of procedural unconscionability is consistent with Arizona public policy favoring arbitration. "The whole object of discovery is that mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Simpson v. Heiderich*, 4 Ariz. App. 232, 236, 419 P.2d 362, 366 (1966). Discovery would also prevent dispositions on the issue of procedural unconscionability "from becoming a guessing game." *U–Totem Store*, 142 Ariz. at 552, 691 P.2d at 318. And, because arbitration agreements are subject to the same enforceability defenses as any other contract, *Dueñas*, 236 Ariz. 130, ¶ 6, 336 P.3d at 768, it is the prerogative and obligation of courts to determine the validity of an arbitration agreement prior to enforcement, *see Guidotti*, 716 F.3d at 773, which cannot be done properly without an adequate vetting of the issue.

¶ 34 Finally, permitting limited discovery on the issue of procedural unconscionability need not result in protracted, inappropriate discovery. Trial judges have broad discretion to control the scope and extent of discovery. *Brown v. Superior Court*, 137 Ariz. 327, 331, 670 P.2d 725, 729 (1983) ("[I]n matters of discovery a trial court has broad discretion which will not be disturbed absent a showing of abuse."); *see also State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, ¶ 12, 13 P.3d 1169, 1174 (2000) (same). Further, Rule 26(b)(1)(B) requires a court to "limit the frequency or extent of discovery otherwise allowed by [the] rules" if, among other things, it determines the discovery is unreasonable or outside the permissible scope.[9] *See also* Rule 26(c)(1)(D), Ariz. R. Civ. P. (protective order "limiting the scope of discovery to certain matters"). We trust trial judges to use the tools at their disposal to appropriately limit discovery on the issue of procedural unconscionability in light of the facts of the particular case.[10]

## Disposition

¶ 35 For the foregoing reasons, we affirm the trial court's decision finding the Agreement not substantively unconscionable. On the issue of procedural unconscionability, we vacate and remand the matter to the trial court for further proceedings consistent with this opinion.

---

9. "[S]ubstantial transactions," those involving significant risk, require greater scrutiny for procedural unconscionability than do "[r]outine transactions involving insignificant risk." *Dueñas*, 236 Ariz. 130, ¶ 9, 336 P.3d at 768.

10. We leave it to the trial court's discretion to determine the appropriate extent of discovery on the issue of procedural unconscionability in the proceedings on remand.