NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EVAN LANE, et al., *Plaintiffs/Appellants*,

*v.*

THE CENTER FOR ORTHOPEDIC AND RESEARCH
EXCELLENCE INC., et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0177
FILED 2-25-2021

Appeal from the Superior Court in Maricopa County
No.  CV2015-007755
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

Law Offices of Luis P. Guerra, L.L.C., Phoenix
By Luis P. Guerra
*Co-Counsel for Plaintiffs/Appellants*

David Shapiro Law, PLLC, Scottsdale
By David C. Shapiro
*Co-Counsel for Plaintiffs/Appellants*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Katherine M. Corcoran, Jessica J. Kokal, Alicyn M. Freeman, Kelley M. Jancaitis
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

¶1　　　　After Franki Lane ("Lane") died, her surviving children—Evan, Garrick, and Cody Lane (collectively, "Appellants")—filed a wrongful death lawsuit, naming several defendants, including The Center for Orthopedic and Research Excellence, Inc. ("CORE") and surgeon Dr. Joshua Abrams.  The jury returned a verdict in favor of the defendants. Appellants argue an improper jury instruction and cumulative expert testimony that violated the one-expert-per-issue rule denied them a fair trial.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2　　　　Dr. Abrams, an employee of CORE, performed spinal surgery on Lane in July 2013.  Lane was discharged four days after the procedure, and Dr. Abrams prescribed several medications for pain, including opioids. The following day, a friend found Lane unresponsive in bed, and emergency responders pronounced Lane dead at the scene.  The medical examiner determined Lane died from mixed-drug intoxication—including medications not prescribed by or disclosed to the defendants—and described her death as an "[a]ccident."

¶3　　　　Appellants sued CORE, Dr. Abrams, and other later-dismissed defendants for medical negligence that caused or contributed to Lane's wrongful death, specifically alleging Lane was prematurely discharged and overprescribed the medications that caused her death.  The defendants denied liability, alleging they complied with the applicable standard of care, and that Lane intentionally or negligently caused or contributed to her death.  The case proceeded to a ten-day jury trial, at which several experts testified.  The court granted the defendants' request to instruct the jury on intervening cause over Appellants' objections that the evidence did not support the defense's contention that Lane had committed

2

suicide. The instruction explained in part that, absent certain stated exceptions, "suicide is an intervening cause which supersedes the [d]efendants' liability." The court also instructed the jury on comparative fault and provided two verdict forms, including one that read:

> Verdict Form 1 (Use if you find for Plaintiffs)
>
> We, the Jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find in favor of Plaintiffs, and find the full compensatory damages to be:
>
> Evan Lane: $_____
>
> Garrick Lane: $_____
>
> Cody Lane: $_____
>
> We find the relative degrees of fault to be:
>
> The CORE Institute and Dr. Joshua Abrams: ____%
>
> [Franki] Lane: ____%
>
> **Total 100%**

The second verdict form read:

> Verdict Form 2 (Use if you find for Defendants)
>
> We, the Jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find in favor of Defendants The CORE Institute and Dr. Joshua Abrams.

Appellants did not object to the verdict forms at trial and did not request or provide proposed special interrogatories for the jury to answer.

¶4         The jury returned a unanimous verdict in favor of CORE and Dr. Abrams, using the second verdict form. Appellants moved to set aside the resulting judgment and for a new trial, arguing the superior court had permitted improper expert testimony and the defendants failed to prove Lane had committed suicide to justify the jury instruction on intervening cause. The court denied the motions.

¶5         This timely appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**ANALYSIS**

*I.      Allocation of Fault*

¶6          Appellants argue the superior court erred in giving the intervening cause instruction to the jury.  They contend the instruction contravenes Arizona's comparative-fault law and that insufficient evidence supported the defendants' contention that Lane committed suicide.  We review the court's decision to give a jury instruction for an abuse of discretion.  *Stafford v. Burns*, 241 Ariz. 474, 478, ¶ 10 (App. 2017).  We review *de novo* whether an instruction correctly states the law and will reverse only if "the challenged instruction was erroneous and prejudicial to the appellant's rights."  *Romero v. Sw. Ambulance*, 211 Ariz. 200, 204, ¶ 8 (App. 2005).

¶7          Before we consider Appellants' argument that the instruction is incompatible with Arizona law, we address the contention of CORE and Dr. Abrams that Appellants waived this argument by not raising it before the superior court.  *See Douglas v. Vancouver Plywood Co.*, 16 Ariz. App. 364, 367 (1972) ("[A]ppellate review of a case will ordinarily be limited to the theories tried in the court below." (citation omitted)).  In the joint pretrial statement, the parties listed "[w]hether Franki Lane's actions directly and proximately caused her own death" and "[t]he appropriate allocation of fault, if any" as agreed-upon issues of fact and law.  In his opening statement, Appellants' attorney told the jury they would hear from the defense "[t]hat Ms. Lane intentionally overdosed and committed suicide."  And Appellants did not object to the verdict form at trial that permitted the jury to allocate fault to Lane if it found in favor of Appellants.

¶8          Appellants nevertheless characterize the alleged error as a fundamental error.  "Only fundamental error . . . may be raised for the first time on appeal."  *State v. Holder*, 155 Ariz. 83, 85 (1987).  Arizona courts rarely apply fundamental error analysis in civil cases and generally will do so only if the error deprives a party of a constitutional right and the party alleging the error shows prejudice.  *See Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 420 (1988); *Mill Alley Partners v. Wallace*, 236 Ariz. 420, 423, ¶ 9 (App. 2014).  Appellants argue that "[a]n Arizona plaintiff has a constitutional right to have a jury properly apply principles of comparative fault and assumption of risk."  In support of their argument, they cite Article 18, Section 5, of the Arizona Constitution, which provides: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."  According to Appellants, the defendants' failure to timely designate Lane

as a nonparty-at-fault per Arizona Rule of Civil Procedure ("Rule") 26(b)(5) and A.R.S. § 12-2506(B) constitutes a constitutional violation. The alleged error manifested in the challenged verdict form and the jury instruction on suicide now challenged on appeal.

**¶9**        As a preliminary matter, we observe that, without submission of and answers to special interrogatories, we have no way to determine why the jury returned a defense verdict or—more to the point—whether they concluded that Lane committed suicide. On this record, the jury could have chosen to believe the defense expert testimony that CORE and Dr. Abrams met the applicable standard of care and that plaintiffs simply failed to meet their burden of proof concerning liability. It is not the appellate court's role to speculate about which theory a jury chose as the basis for a general defense verdict. *See Gibson v. Boyle*, 139 Ariz. 512, 518 (App. 1983); *cf. Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 181, ¶ 9 (2007) ("An appellate court must determine whether the judgment, not the reasoning, of the superior court was correct." (citation omitted)).

**¶10**        Further, the designation of a nonparty-at-fault is a disclosure matter, which we review for an abuse of discretion. *Bowen Prods., Inc. v. French*, 231 Ariz. 424, 427, ¶¶ 9-11 (App. 2013). "Negligence or fault of a nonparty may be considered . . . if the defending party gives notice before trial . . . that a nonparty was wholly or partially at fault." A.R.S. § 12-2506(B). Rule 26(b)(5) sets forth the procedure for noticing a nonparty-at-fault and precludes the trier of fact from allocating "fault to a nonparty who is not disclosed . . . except on stipulation of all the parties or on motion showing good cause, reasonable diligence, and lack of unfair prejudice to all other parties."[1]

**¶11**        Even assuming the superior court abused its discretion in allowing the defense to proceed without formal, prior compliance with Rule 26(b)(5), we are not persuaded such alleged procedural error amounts to fundamental error. A key purpose of Rule 26(b)(5) and A.R.S. § 12-2506(B) is to allow "each party to know exactly what every other party in a case is claiming with respect to who caused the injury." *LyphoMed, Inc. v.*

---

[1]        Although not necessary to the resolution of this appeal, we observe that in any wrongful death action based on alleged medical negligence—particularly those actions where the actions or failure to comply with medical advice by the patient are alleged as defenses—the patient's conduct is at issue and, other than the timely disclosure of such defenses in an answer, disclosure statements, and discovery, the defense need not formally invoke Rule 26(b)(5). *See Gibson*, 139 Ariz. at 515.

*Superior Court (Carter)*, 172 Ariz. 423, 428 (App. 1992). As evidenced by the defendants' answer, disclosure statement, and discovery responses, and the joint pretrial statement and opening statement, Appellants unquestionably had notice CORE and Dr. Abrams would argue Lane was at fault in causing her death, either by intent or through her negligence. "At its heart, Rule 26(b)(5) is in service of a defendant's substantive right to have the jury assess fault to a non-party," and we will not read the rule to undermine the statutory and constitutional rights of CORE and Dr. Abrams to not be assessed more than their "proportionate share of fault." *State v. Mahoney*, 246 Ariz. 493, 496, ¶¶ 12-13 (App. 2019). The superior court did not abuse its discretion in governing disclosure matters, and we discern no violation of constitutional rights. No fundamental error occurred, meaning Appellants have waived this argument.

**¶12**  Because it is improper for this court to speculate about why the jury returned a general defense verdict, and because Appellants have waived their argument that CORE and Dr. Abrams failed to properly give notice of Lane as a nonparty-at-fault, we do not reach the issue of whether the jury instruction describing suicide as an intervening superseding cause conflicts with Arizona's comparative-fault law.[2]

**¶13**  We further conclude that Appellants' argument that the jury instruction on suicide lacked evidentiary support is unpersuasive. The superior court must instruct the jury on a legal theory supported by substantial evidence. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 539 (1982). On appeal, we view the evidence in the light most favorable to the requesting party. *Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, 416, ¶ 11 (2015). CORE and Dr. Abrams presented evidence that Lane had

---

[2]  This court recently outlined concerns about the common-law suicide rule, which "draws from society's historical view of suicide as sinful and immoral, and its historical classification as a felony." *Parton v. Jeans*, 1 CA-CV 18-0024, 2019 WL 6608750, at *3, ¶ 11 (App. 2019) (mem. decision) (citation omitted). In *Parton*, we suggested the Arizona Supreme Court "revisit the aging majority rule," while recognizing our court is constrained to follow the precedent set forth by our supreme court, and to determine otherwise is outside "the scope of our authority." *Id.* at ¶¶ 11, 13. Notwithstanding *Parton*'s criticism of *Maricopa County v. Cowart*, 106 Ariz. 69, 71 (1970)—which established "that the suicide by the injured party is a superseding cause which is neither foreseeable nor a normal incident of the risk created and therefore relieves the original actor from liability for the death resulting from the suicide"—our supreme court recently denied the petition for review filed in *Parton*.

previously sought treatment for suicidal ideations and depression and that she took an "accelerated rate" of her pain medications shortly before her death, including medications not prescribed by or necessarily disclosed to the defendants during their care. They also presented evidence that less than a year before her death, Lane had suggested "she would commit suicide" if a pain clinic could not provide her relief and told a care provider that she had "been using medications from her neighbors" when her prescribed pain medications were ineffective. On this record, the court did not err in instructing the jury on the theory that Lane intentionally ingested an overdose of her medications.

## II. *Expert Testimony*

**¶14** Appellants also argue the superior court erred in allowing cumulative expert testimony on the cause of Lane's death and in permitting more than one expert to testify for the defense about causation in violation of Rule 26(b)(4)(F).

**¶15** At issue here is the testimony of two of the expert witnesses CORE and Dr. Abrams called to testify: Pathologist Dr. Rodney Markin, disclosed to testify regarding the medical examiner's autopsy report and the cause of Lane's death, and pharmacologist Dr. Raffi Simonian, disclosed to testify as to the toxicology report, the toxicity levels of various medications Lane had taken, and as initially disclosed, the cause of Lane's death. Appellants objected to the proposed testimony, arguing the two experts would both be testifying as to the cause of Lane's death. The defendants then responded Dr. Simonian would only testify about toxicology, while Dr. Markin would be the expert testifying about the cause of death.

**¶16** In an under advisement ruling, the court noted, "While there are some overlapping opinions, there are opinions which do not [overlap]. Most of Dr. Simonian's proposed testimony is about the absorption rate, normal and lethal blood concentrations, and the half-life of the various medications taken by Ms. Lane. These are not opinions covered by Dr. Markin, and Dr. Simonian is allowed to testify as to those issues." The court then identified five areas of overlapping opinions and ordered that only one expert would be allowed to testify as to each of the five areas of overlap. As is relevant here, the court allowed Dr. Markin to testify whether "Lane's cause of death is from an intentional overdose of her medication."

**¶17** In their brief, Appellants identify a handful of statements culled from Dr. Simonian's testimony as cumulative to Dr. Markin's

testimony about whether Lane intentionally ingested an overdose of her medication. At trial, Appellants' attorney objected to these statements, but the court found only one cumulative to Dr. Markin's testimony. During direct examination, while answering a question about postmortem redistribution levels of certain medications in Lane's blood, Dr. Simonian stated that information from the toxicology report "lends to a conclusion of an intentional injection of medication." The court found the statement cumulative but determined it was not "overly-prejudicial," primarily because the statement "was nonresponsive" to the question. The court and Appellants' counsel agreed that if the court struck the testimony, "that just draws more attention to that sentence." The court then admonished Dr. Simonian not to give his opinions about the cause of Lane's death. In closing arguments, the defense, as further instructed by the court, did not reference Dr. Simonian's testimony concerning Lane's motivation in ingesting the medication.

¶18 We review the superior court's rulings on the admission of evidence for an abuse of discretion. *Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 166, ¶ 55 (App. 2007). "The court *may* exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . needlessly presenting cumulative evidence." Ariz. R. Evid. 403 (emphasis added). Cumulative evidence "augments or tends to establish a point already proved by other evidence." *State v. Kennedy*, 122 Ariz. 22, 26 (App. 1979) (citation omitted). But erroneous admission of cumulative evidence generally does not require reversal. *See State v. Williams*, 133 Ariz. 220, 226 (1982). The record shows the court took care not to emphasize Dr. Simonian's cumulative statement, reminded him not to testify on causation, and instructed counsel for CORE and Dr. Abrams not to address the cumulative testimony in closing arguments. We generally do not substitute our judgment for that of the superior court. *See State v. Steinle ex rel. Maricopa Cnty.*, 239 Ariz. 415, 419, ¶ 14 (2016) (explaining that rulings on Arizona Rule of Evidence 403 issues are highly contextual and necessarily depend on assessing all evidence in a case).

¶19 One of the purposes of Rule 26(b)(4) is to avoid the presentation of cumulative evidence. *See Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 526, ¶ 21 (App. 2014). The rule also emphasizes the court's discretion in evidentiary matters. Here, the cause of Lane's death is a complex issue spanning multiple professional disciplines. In such instances, "the court should be liberal in allowing expansion of the limitation upon experts." Ariz. R. Civ. P. 26 (Committee Comment to 1991 amendment to Rule 26(b)(4)). "[D]efining the scope of an issue is left to the trial court's reasonable discretion." *Felder*, 215 Ariz. at 167, ¶ 69. The

superior court carefully and appropriately exercised its discretion in identifying areas of overlap in the issue of causation, limiting testimony on those areas to one witness, and ruling that Dr. Simonian's cumulative statement was not prejudicial.

### III.   Costs on Appeal

**¶20**      Both parties request costs on appeal.  Because they are the successful party, CORE and Dr. Abrams are entitled to their taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶21**      For the foregoing reasons, we affirm the superior court's judgment and award CORE and Dr. Abrams their taxable costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:   AA

9